**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | ) | FILED COPY: APRIL 08, 2008 |
| | ) | 08CV1995        DAJ |
| Plaintiff, | ) | JUDGE GOTTSCHALL |
| | ) Case No.: | MAGISTRATE JUDGE NOLAN |
| PRESIDENTIAL PAVILION, LLC; | ) | |
| WEDGEWOOD NURSING PAVILION, | ) | |
| LTD.;  and DYNAMIC HEALTH CARE, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Lexington Insurance Company ("Lexington"), by its undersigned attorneys, for its Complaint for Declaratory Judgment, states as follows:

### Jurisdiction and Venue

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states, and the amount in controversy exceeds $75,000.

3.      Venue is proper in the Northern District of Illinois, as the insurance policy at issue was issued to an Illinois insured, and the events referred to in the underlying complaint, occurred in the Northern District.

4.      Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts.

5.      Presidential Pavilion, LLC is an Illinois limited liability company with its principal place of business in Illinois.

6.    Wedgewood Nursing Pavilion, Ltd. is an Illinois corporation with its principal place of business in Illinois.

7.    Dynamic Healthcare, Inc. is an Illinois corporation with its principal place of business in Illinois.

## The Underlying Complaint

8.    On October 13, 2004, a complaint was filed in the Circuit Court of Cook County, Illinois, Case No. 04 L 011587, on behalf of the Estate of Herman Paige, by Rosie Paige, individually, and as Special Administrator. Named as defendants were Presidential Pavilion, LLC; Presidential Pavilion, LLC, d/b/a Presidential Pavilion and/or Wedgewood Nursing Pavilion; Wedgewood Nursing Pavilion, Ltd.; Wedgewood Nursing Pavilion, Ltd. d/b/a Presidential Pavilion and/or Wedgewood Nursing Pavilion; Dynamic Healthcare, Inc.; Dynamic Healthcare, Inc. d/b/a Presidential Pavilion and/or Wedgewood Nursing Pavilion; and Michael Rosen, individually and as agent, servant and/or employee of Presidential Pavilion and/or Wedgewood Nursing Pavilion.

9.    A Second Amended complaint was filed in the Paige lawsuit on February 22, 2005.  Attached hereto as Exhibit A is a true and accurate copy of the Second Amended Complaint.

10.    In the Second Amended Complaint, the plaintiff alleges that each of the defendant entities, alternately, was owner, licensee, and operator of a long-term facility located at 8001 South Western Avenue, Chicago, Illinois, and that during the relevant period, Herman Paige resided and received personal care in the facility.

11.    The plaintiff alleges that as a result of various acts or omissions on the part of the defendants, Herman Paige developed septicemia and died October 14, 2002, at MacNeal

Hospital.

12.    Attached as an exhibit to the Second Amended Complaint is a physician's report

that contains following conclusion:

> It is clear to me that Mr. Paige developed decubitis ulcers while in the
> defendant's nursing home and due to the above claims of negligence the patient
> condition worsened necessitating the above knee amputation and caused his death
> due to septicemia. In my opinion, negligence has occurred in the course of
> medical treatment by the nursing home and its agents. The ulcers occurred while
> under he care and treatment of the defendant nursing home and while Mr. Paige
> was under their control and management. That in the normal course of events, this
> injury and condition would have not occurred if the defendant had used a
> reasonable standard of professional care while the ulcers were under their control
> and management.

## The Lexington Policy

13.    Lexington issued Policy No. 6790997, effective March 15, 2002 to March 15,

2003, to EMI Enterprises, Inc. as first named insured. The policy provides healthcare general

liability and professional liability coverage on a claims made basis. Attached hereto as Exhibit B

is a true and accurate copy of the policy.

14.    The limit of liability of liability provided by the policy is excess of a $250,000

self-insured retention.

15.    The insuring agreement of the healthcare professional liability coverage

part provides, in part, as follows:

> **We** will pay those amounts that you are legally required to pay others as damages
> resulting from a **medical incident** arising out of **professional services** provided
> by any Insured.  The **medical incident** must take place on or after the retroactive
> date and before the end of the **policy period**.  A claim for a **medical incident**
> must be first made against an Insured during the **policy period** or the extended
> reporting period, if applicable.

16.    The insureds retained counsel to defend them in the Paige lawsuit. On or about

December 11, 2007, Lexington was advised that there had been a mediation the prior day that

concluded with a settlement offer of $215,000 by the defendants and the plaintiff's settlement demand at $625,000.

17.    The defendants contend that Lexington has an obligation to provide coverage in excess of the self-insured retention for settlement of, or a judgment entered against them in the Paige lawsuit.

18.    Lexington contends that it has no obligation to provide coverage for the Paige lawsuit. Therefore, there is an actual controversy between the parties.

## COUNT I

### (Policy Release)

19.    The allegations in paragraphs 1 through 18 are incorporated as though fully set forth herein.

20.    EMI Enterprises, Inc. executed a policy release with respect to Lexington Policy No. 6790997. The policy release is attached to the policy (Exhibit B) as Endorsement 8C.  The policy release provides, in relevant part, as follows:

> In consideration of the return premium called for under Endorsement #8A, Incurred Loss Retrospective Rating Premium Adjustment for the period 3/15/02 to 3/15/03, EMI Enterprises, Inc. agrees that the policy is considered to be void ab initio for the policy period 3/15/02 to 3/15/03.

> In consideration of the return premium, EMI Enterprises, Inc., further acknowledges and agrees that Lexington Insurance Company is fully released from any further obligation to investigate, defend or make payment of any kind for any claim or for any incident which has been reported to Lexington but which has not yet become a claim.

21.    Pursuant to the policy release, the Lexington policy was no longer in effect as of the execution of the policy release in 2005. Therefore, Lexington has no obligation to defend or indemnify the defendants in the Paige lawsuit.

## COUNT II

**(Insuring Agreement)**

22.    The allegations in paragraphs 1 through 21 are incorporated as though fully set forth herein.

23.    In a letter dated September 27, 2002, Presidential Pavilion received notice of a claim by Herman Paige arising out of an injury on July 17, 2002. The letter included no description of the injury or accident, but merely requested that Presidential Pavilion notify its insurer. Attached hereto as Exhibit D is a true and accurate copy of the September 27, 2002 letter.

24.    Lexington, through its claims administrator, was subsequently advised that on the date referred to in the September 27, 2002 letter, Herman Paige fell on the premises of Presidential Pavilion.

25.    The Lexington policy contains the following provision:

D.    All claims arising from continuous, related, or repeated **medical incidents** shall be treated as arising out of one **medical incident**. Only the Policy in effect when the first such claim is made shall apply to all such claims.

26.    The policy defines "medical incident" as "any act, error or omission in the providing of or failure to provide professional services."

27.    The incident referred to in the September 27, 2002 notice letter and the allegations in the Second Amended Complaint in the Paige lawsuit do not constitute the same, continuous, related or repeated "medical incidents" as defined in the policy.

28.    Therefore, the claim referred in the Second Amended Complaint was first made when the original Paige Complaint was served on the defendants after it was filed on October 13, 2004.

29.     In the alternative, even assuming that the policy release is not valid, which Lexington denies, the policy does not provide coverage for the claim set forth in the Second Amended Complaint, as the claim was first made in or about October 2004, subsequent to expiration of the Lexington policy. Therefore, the claim does not fall within the claims made insuring agreement of the policy.

## COUNT III

### (Late Notice)

30.     The allegations in paragraphs 1 through 29 are incorporated as though fully set forth herein.

31.     The Self-Insured Retention Endorsement in the policy contains the following notice provision:

F.      The First Named Insured shall immediately notify us in writing of any claims to which this policy applies which

1.     an insured has received notice of a suit in which the damages demand exceeds the amount of the Self-Insured Retention, or,

2.     may exceed 50% of the Self Insured Retention, or,

3.     involves any of the following:

a.     stage IV decubitus ulcers, or,
b.     sexual abuse of a patient or resident, or,
c.     falls by a patient or resident which required the patient or resident to be admitted to an acute care facility.

32.     At the very latest, the insureds had an obligation under the terms of the Self-Insured Retention Endorsement to provide immediate notice of the Paige claim when the Second Amended Complaint was filed in February 2004.

33.     Lexington received notice of the Paige lawsuit on or about December 11, 2007.

34.     Therefore, in the alternative, even assuming that the policy release is not valid and that the claim referred to in the Second Amended Complaint in the Paige lawsuit falls within the insuring agreement of the policy, Lexington has no obligation to provide coverage for the claim as a result of the insureds' breach of the notice provision of the policy.

Wherefore, Lexington Insurance Company respectfully requests that the Court enter judgment in its favor and against the defendants herein, and that the Court declare that Lexington has no duty to defend or indemnify the defendants in connection with the lawsuit filed against them on behalf of the Estate of Herman Paige, by Rosie Paige, individually, and as Special Administrator, Case No. 04 L 011587 in the Circuit Court of Cook County, Illinois.

Dated:  April ___, 2008.


Respectfully submitted,

Lexington Insurance Company


By:  One of their Attorneys

Jeffrey A. Goldwater, Esq.
Robert A. Chaney, Esq.
Bollinger, Ruberry & Garvey
500 West Madison Street
Suite 2300
Chicago, IL 60661
(312) 466-8000
(312) 466-8001 (fax)

08CV1995      DAJ
JUDGE GOTTSCHALL
MAGISTRATE JUDGE NOLAN

# Exhibit A

10822

#31555

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARMENT, LAW DIVISION

Estate of HERMAN PAIGE, Decedent by          )
ROSIE PAIGE, as Special Administrator of     )
the Estate of HERMAN PAIGE, ROSIE            )
PAIGE, Individually,                         )
                    Plaintiff(s),       )
                               )

vs.                                          )          No. 04 L 11587
                               )

PRESIDENTIAL PAVILION, LLC, an               )
Illinois Limited Liability Company,          )
PRESIDENTIAL PAVILION, LLC, D/B/A            )
PRESIDENTIAL PAVILION and/or                 )
WEDGEWOOD NURSING PAVILION;                   )
WEDGEWOOD NURSING PAVILION,                    )
LTD., an Illinois Corporation,               )
WEDGEWOOD NURSING PAVILION,                    )
LTD., D/B/A PRESIDENTIAL PAVILION            )
and/or WEDGEWOOD NURSING                       )
PAVILION; DYNAMIC HEALTHCARE,                 )
INC., an Illinois Corporation, DYNAMIC       )
HEALTH CARE, INC., D/B/A                      )
PRESIDENTIAL PAVILION and/or                 )
WEDGEWOOD NURSING PAVILION;                   )
MICHAEL ROSEN, Individually and as           )
agent, servant and/or employee of            )
Presidential Pavilion and/or Wedgewood       )
Nursing Pavilion; and UNKNOWN                )
AGENTS, SERVANTS AND/OR                      )
EMPLOYEES OF THE ABOVE-NAMED                  )
DEFENDANTS.                                   )
                               )
                               )

                    Defendant(s).

## SECOND AMENDED COMPLAINT AT LAW

### COUNT I

NOW COME the Plaintiffs, the Estate of HERMAN PAIGE, Decedent, by
ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, by and
through its attorney, LAW OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C.,
and for its complaint against PRESIDENTIAL PAVILION, LLC, D/B/A

PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, and pleading both in the alternative and hypothetical, states as follows:

1.      That on and before October 14, 2002 and at all times material, Defendants, PRESIDENTIAL PAVILION, LLC, D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION Owner and Licensee, was the owner, licensee, and operator of the long-term care facility known as Presidential Pavilion a/k/a Wedgewood Nursing Pavilion, located at 8001 South Western Avenue in the City of Chicago, County of Cook, State of Illinois.

2.      That on and before October 14, 2002 and at all times material, Defendants, PRESIDENTIAL PAVILION, LLC, D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION provided its residents with medical and nursing care and other daily living assistance, by staffing and employing physicians, nurses and other health care professionals.

3.      That prior to October 14, 2002 and at all times material herein Defendant, MICHAEL ROSEN, was the Administrator of Presidential Pavilion, LLC., an Illinois Limited Liability Corporation, d/b/a Presidential Pavilion and/or Wedgewood Nursing Pavilion located in the County of Cook, State of Illinois.

4.      That on and before October 14, 2002, and at all times material, HERMAN PAIGE, Decedent, was a person residing in and receiving personal care from Defendants' facility.

5.      That on said date, it was the duty of Defendants and Defendants' agents and employees to treat the Plaintiff's Decedent with reasonable care.

6.      That on that same date, Defendants, through their employees and agents, violated their duty to Plaintiff's Decedent by committing the following acts and/or omissions:

   a.  That Defendants failed to properly assess the Plaintiff's Decedent;
   b.  That Defendants failed to documents and provide a plan of care;
   c.  That Defendants failed to enact a plan of treatment for decubitus ulcers;

    d.  That Defendants failed to prevent the development and worsening of decubitus ulcers;

    e.  That Defendants provided improper care and/or treatment of decubitus ulcers;

    f.  That Defendants failed to properly follow the plan of care and follow doctor's orders;

    g.  That Defendants failed to follow their own policy and procedure manual;

    h.  That Defendants failed to hire sufficient number of trained and competent staff;

    i.  That Defendants' facility was understaffed;

    j.  That Defendants failed to supervise the management of the facility;

    k.  That Defendants failed to notify the physician in a timely manner;

    l.  That Defendants allowed the Plaintiff's Decedent to develop infection;

    m.  That Defendants failed to provide adequate medical care to the Plaintiff's Decedent which lead to his physical deterioration and death;

    n.  That Defendants failed to provide adequate personal care to the Plaintiff's Decedent which lead to his physical deterioration and death,

    o.  That Defendants failed to provide adequate maintenance to the Plaintiff's Decedent which lead to his physical deterioration and death,

    p.  That the Defendants neglected Plaintiff's Decedent which lead to his physical deterioration and death, and,

    q.  That Defendants violated the nursing home act.

    7.    That as a direct and proximate result of Defendant's violation of its duty as aforesaid, Plaintiff's Decedent developed septicemia and died on October 14, 2002 at MacNeal Hospital in Cook County, Illinois.

    8.    That as a direct and proximate result of the aforesaid, Plaintiff suffered serious injuries of a personal and pecuniary nature including but not limited to great pain and suffering, medical expenses, and his family incurred funeral expenses.

    9.    That a cause of action for Wrongful Death under 740 ILCS 180/1 has accrued to the estate of the deceased, HERMAN PAIGE, for the benefit of his heirs suffering pecuniary loss.

    10.    That Plaintiff, ROSIE PAIGE was appointed Special Administrator of the Estate of HERMAN PAIGE by the Circuit Court of Cook County, Illinois.

    11.    That attached hereto and made a part hereof in conformance with 735 ILCS 5/2-622 are both an Affidavit of Counsel and an Affidavit from a Health Care Professional.

WHEREFORE, Plaintiffs, the Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, prays for judgment against Defendants, PRESIDENTIAL PAVILION, LLC, D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, in an amount necessary to compensate them fully and fairly for all losses compensable, including costs and attorneys' fees, in an amount in excess of the jurisdictional limits of this court.

## COUNT II

NOW COME the Plaintiffs, the Estate of HERMAN PAIGE, Decedent, by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, by and through its attorney, LAW OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C., and for its complaint against PRESIDENTIAL PAVILION, LLC, D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, and pleading both in the alternative and hypothetical, states as follows:

1-8.    Plaintiff realleges and incorporates herein paragraphs 1 through 8 of Count I as if fully set forth herein.

9.    That this occurrence speaks for itself; that is, that such an occurrence would not have occurred in the ordinary course of events in the absence of negligence of the Defendants.

WHEREFORE, Plaintiffs, the Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, prays for judgment against Defendants, PRESIDENTIAL PAVILION, LLC, D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, in an amount necessary to compensate them fully and fairly for all losses compensable,

including costs and attorneys' fees, in an amount in excess of the jurisdictional limits of this court.

## COUNT III

NOW COME the Plaintiffs, the Estate of HERMAN PAIGE, Decedent, by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, by and through its attorney, LAW OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C., and for its complaint against WEDGEWOOD NURSING PAVILION, LTD., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, and pleading both in the alternative and hypothetical, states as follows:

1.      That on and before October 14, 2002 and at all times material, Defendant, WEDGEWOOD NURSING PAVILION, LTD., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION Owner and Licensee, was the owner, licensee, and operator of the long-term care facility known as Presidential Pavilion a/k/a Wedgewood Nursing Pavilion, located at 8001 South Western Avenue in the City of Chicago, County of Cook, State of Illinois.

2.      That on and before October 14, 2002 and at all times material, Defendants, WEDGEWOOD NURSING PAVILION, LTD., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION provided its residents with medical and nursing care and other daily living assistance, by staffing and employing physicians, nurses and other health care professionals.

3.      That prior to October 14, 2002 and at all times material herein Michael Rosen was the Administrator of Wedgewood Nursing Pavilion, Ltd., an Illinois Corporation, d/b/a Presidential Pavilion and/or Wedgewood Nursing Pavilion located in the County of Cook, State of Illinois.

4.      That on and before October 14, 2002, and at all times material, HERMAN PAIGE, Decedent, was a person residing in and receiving personal care from Defendants' facility.

5.      That on said date, it was the duty of Defendants and Defendants' agents and employees to treat the Plaintiff's Decedent with reasonable care.

6.      That on that same date, Defendants, through their employees and agents, violated their duty to Plaintiff's Decedent by committing the following acts and/or omissions:

    a    That Defendants failed to properly assess the Plaintiff's Decedent;

    b    That Defendants failed to documents and provide a plan of care;

    c    That Defendants failed to enact a plan of treatment for decubitus ulcers;

    d    That Defendants failed to prevent the development and worsening of decubitus ulcers;

    e    That Defendants provided improper care and/or treatment of decubitus ulcers;

    f    That Defendants failed to properly follow the plan of care and follow doctor's orders;

    g    That Defendants failed to follow their own policy and procedure manual;

    h    That Defendants failed to hire sufficient number of trained and competent staff;

    i    That Defendants' facility was understaffed;

    j    That Defendants failed to supervise the management of the facility;

    k    That Defendants failed to notify the physician in a timely manner;

    l    That Defendants allowed the Plaintiff's Decedent to develop infection;

    m    That Defendants failed to provide adequate medical care to the Plaintiff's Decedent which lead to his physical deterioration and death;

    n    That Defendants failed to provide adequate personal care to the Plaintiff's Decedent which lead to his physical deterioration and death,

    o    That Defendants failed to provide adequate maintenance to the Plaintiff's Decedent which lead to his physical deterioration and death,

    p    That the Defendants neglected Plaintiff's Decedent which lead to his physical deterioration and death, and,

    q    That Defendants violated the nursing home act.

7.      That as a direct and proximate result of Defendant's violation of its duty as aforesaid, Plaintiff's Decedent developed septicemia and died on October 14, 2002 at MacNeal Hospital in Cook County, Illinois.

8.      That as a direct and proximate result of the aforesaid, Plaintiff suffered serious injuries of a personal and pecuniary nature including but not limited to great pain and suffering, medical expenses, and his family incurred funeral expenses.

9.     That a cause of action for Wrongful Death under 740 ILCS 180/1 has accrued to the estate of the deceased, HERMAN PAIGE, for the benefit of his heirs suffering pecuniary loss.

10.     That Plaintiff, ROSIE PAIGE was appointed Special Administrator of the Estate of HERMAN PAIGE by the Circuit Court of Cook County, Illinois.

11.     That attached hereto and made a part hereof in conformance with 735 ILCS 5/2-622 are both an Affidavit of Counsel and an Affidavit from a Health Care Professional.

WHEREFORE, Plaintiffs, the Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, prays for judgment against Defendants, WEDGEWOOD NURSING PAVILION, LTD., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, in an amount necessary to compensate them fully and fairly for all losses compensable, including costs and attorneys' fees, in an amount in excess of the jurisdictional limits of this court.

## COUNT IV

NOW COME the Plaintiffs, the Estate of HERMAN PAIGE, Decedent, by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, by and through its attorney, LAW OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C., and for its complaint against WEDGEWOOD NURSING PAVILION, LTD., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, and pleading both in the alternative and hypothetical, states as follows:

1-8.    Plaintiff realleges and incorporates herein paragraphs 1 through 8 of Count III as if fully set forth herein.

9.    That this occurrence speaks for itself; that is, that such an occurrence would not have occurred in the ordinary course of events in the absence of negligence of the Defendants.

WHEREFORE, Plaintiffs, the Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, prays for judgment against Defendants, WEDGEWOOD NURSING PAVILION, LTD., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, in an amount necessary to compensate them fully and fairly for all losses compensable, including costs and attorneys' fees, in an amount in excess of the jurisdictional limits of this court.

## COUNT V

NOW COME the Plaintiffs, the Estate of HERMAN PAIGE, Decedent, by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, by and through its attorney, LAW OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C., and for its complaint against DYNAMIC HEALTHCARE, INC., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, and pleading both in the alternative and hypothetical, states as follows:

1.    That on and before October 14, 2002 and at all times material, Defendant, DYNAMIC HEALTHCARE, INC., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION Owner and Licensee, was the owner, licensee, and operator of the long-term care facility known as Presidential Pavilion a/k/a Wedgewood Nursing Pavilion, located at 8001 South Western Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    That on and before October 14, 2002 and at all times material, Defendants, DYNAMIC HEALTHCARE, INC., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION provided its residents with medical and nursing care and other daily living assistance, by staffing and employing physicians, nurses and other health care professionals.

3.    That prior to October 14, 2002 and at all times material herein Michael Rosen was the Administrator of Dynamic Healthcare, Inc., an Illinois Corporation, d/b/a Presidential Pavilion and/or Wedgewood Nursing Pavilion located in the County of Cook, State of Illinois.

4.    That on and before October 14, 2002, and at all times material, HERMAN PAIGE, Decedent, was a person residing in and receiving personal care from Defendants' facility.

5.    That on said date, it was the duty of Defendants and Defendants' agents and employees treat the Plaintiff's Decedent with reasonable care.

6.    That on that same date, Defendants, through their employees and agents, violated their duty to Plaintiff's Decedent by committing the following acts and/or omissions:

     a.  That Defendants failed to properly assess the Plaintiff's Decedent;
     b.  That Defendants failed to documents and provide a plan of care;
     c.  That Defendants failed to enact a plan of treatment for decubitus ulcers;
     d.  That Defendants failed to prevent the development and worsening of decubitus ulcers;
     e.  That Defendants provided improper care and/or treatment of decubitus ulcers;
     f.  That Defendants failed to properly follow the plan of care and follow doctor's orders;
     g.  That Defendants failed to follow their own policy and procedure manual;
     h.  That Defendants failed to hire sufficient number of trained and competent staff;
     i.  That Defendants' facility was understaffed;
     j.  That Defendants failed to supervise the management of the facility;
     k.  That Defendants failed to notify the physician in a timely manner;
     l.  That Defendants allowed the Plaintiff's Decedent to develop infection;
     m. That Defendants failed to provide adequate medical care to the Plaintiff's Decedent which lead to his physical deterioration and death;

n.  That Defendants failed to provide adequate personal care to the Plaintiff's Decedent which lead to his physical deterioration and death,
o.  That Defendants failed to provide adequate maintenance to the Plaintiff's Decedent which lead to his physical deterioration and death,
p.  That the Defendants neglected Plaintiff's Decedent which lead to his physical deterioration and death, and,
q.  That Defendants violated the nursing home act..

7.    That as a direct and proximate result of Defendant's violation of its duty as aforesaid, Plaintiff's Decedent developed septicemia and died on October 14, 2002 at MacNeal Hospital in Cook County, Illinois.

8.    That as a direct and proximate result of the aforesaid, Plaintiff suffered serious injuries of a personal and pecuniary nature including but not limited to great pain and suffering, medical expenses, and his family incurred funeral expenses.

9.    That a cause of action for Wrongful Death under 740 ILCS 180/1 has accrued to the estate of the deceased, HERMAN PAIGE, for the benefit of his heirs suffering pecuniary loss.

10.    That Plaintiff, ROSIE PAIGE was appointed Special Administrator of the Estate of HERMAN PAIGE by the Circuit Court of Cook County, Illinois.

11.    That attached hereto and made a part hereof in conformance with 735 ILCS 5/2-622 are both an Affidavit of Counsel and an Affidavit from a Health Care Professional.

WHEREFORE, Plaintiffs, the Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, prays for judgment against Defendants, DYNAMIC HEALTHCARE, INC., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, in an amount necessary to compensate them fully and fairly for all losses compensable, including costs and attorneys' fees, in an amount in excess of the jurisdictional limits of this court.

## COUNT VI

NOW COME the Plaintiffs, the Estate of HERMAN PAIGE, Decedent, by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, by and through its attorney, LAW OFFICES OF STEVEN J. MALMAN & ASSOCIATES, P.C., and for its complaint against DYNAMIC HEALTHCARE, INC., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, and pleading both in the alternative and hypothetical, states as follows:

1-8.   Plaintiff realleges and incorporates herein paragraphs 1 through 8 of Count V as if fully set forth herein.

9.   That this occurrence speaks for itself; that is, that such an occurrence would not have occurred in the ordinary course of events in the absence of negligence of the Defendants.

WHEREFORE, Plaintiffs, the Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, prays for judgment against Defendants, DYNAMIC HEALTHCARE, INC., D/B/A PRESIDENTIAL PAVILION and/or WEDGEWOOD NURSING PAVILION AND MICHAEL ROSEN, in an amount necessary to compensate them fully and fairly for all losses compensable, including costs and attorneys' fees, in an amount in excess of the jurisdictional limits of this court.

Respectfully Submitted,

Attorney for Plaintiff

LAW OFFICES OF STEVEN J. MALMAN
& ASSOCIATES, P.C., #31555
205 West Randolph, Ste. 1040
Chicago, IL 60606
312/629-0099

11

#31555

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARMENT, LAW DIVISION

| | | |
|---|---|---|
| Estate of HERMAN PAIGE, Decedent by ROSIE PAIGE, as Special Administrator of the Estate of HERMAN PAIGE, ROSIE PAIGE, Individually, | ) ) ) ) | |
| Plaintiff(s), | ) ) | |
| vs. | ) ) | No. 04 L 11587 |
| PRESIDENTIAL PAVILION, LLC, an Illinois Limited Liability Company, et al. | ) ) ) | |
| Defendant(s). | ) ) ) | |

**AFFIDAVIT PURSUANT TO 735 ILCS § 5/2-622**

I, Steven J. Malman, being first duly sworn under oath, state as follows:

1.      That I have consulted and reviewed the facts of this case with a professional who I reasonably believe (a) is knowledgeable in the relevant issues involved in this particular action; (b) practices or has practiced within the last 6 years or teaches or ha taught within the last 6 years in the same area of health care or medicine that his at issue in the particular action; and (c) is qualified by experience or demonstrated competence in the subject this case.

2.      That attached is the reviewing health professional written report, which after review of the medical records and other relevant material involved in this particular action indicates that there is a reasonable and meritorious cause for the filing of such action.

3.      That I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of this action.

4.      That attached, as Exhibit A is a copy of the health professional's report referenced in this affidavit.

5.    That this is not a re-filed cause of action and has never been non-suited.

6.    That in the opinion of the reviewing health professional, negligence has occurred in the course of medical treatment by the defendant nursing home and it's agents.  That Plaintiff, relying upon the medical report hereby certifies that plaintiff is relying upon the doctrine of "res ipsa loquitor."


FURTHER AFFIANT SAYETH NOT

_____
Steven J. Malman
Attorney at Law


SUBSCRIBED AND SWORN TO
Before me this _____ day of February, 2005

_____
Notary Public

Official Seal
Christine M. Hedquist
Notary Public State of Illinois
My Commission Expires 04/24/08

## MEDICAL REPORT

I am a board certified internist; licensed to practice medicine in all branches. I am knowledgeable the relevant issues involved in this particular action involving the plaintiff, the estate of Herma Paige by Rosie Paige and Rosie Paige, individually, specifically the development and progression decubitus ulcer's which lead to infections, amputation and death secondary to sepsis. I curren have a private practice in the City of Chicago, State of Illinois, in which I actively practice in the same area of healthcare or medicine that is at issue in this particular action. I have reviewed th following: 1) State of Illinois Medical Certificate of Death, 2) Holy Cross Hospital records, MacNeal Hospital records and 4) nursing home records. After review of these records, it is m opinion that the plaintiffs listed above have reasonable and meritorious cause to file. It is my opinio that the nursing home and its agents were negligent as follows:

a) They failed to properly assess the patient;
b) They failed to document and provide a plan of care;
c) They failed to enact a plan of treatment for decubitus ulcers;
d) They failed to prevent the development and worsening of decubitus ulcers;
e) The improper care and/or treatment of decubitus ulcers;
f) They failed to properly follow the plan of care and follow doctor's orders;
g) They failed to follow their own policy and procedure manual;
h) They failed to hire sufficient number of trained and competent staff;
i) They were understaffed;
j) They negligently failed to supervise the management of the nursing home;
k) They failed to notify the physician in a timely manner;
l) By allowing the patient to develop infection; and
m) By violating the nursing home care act.

The reasons are the following:  Mr. Paige entered the Presidential Pavilion Nursing Home approximately August of 1997. He entered without the presence of decubitus ulcers. Prior to th date there had been no problems in the histories regarding the presence of decubitus ulcers. On J 17, 2002, the patient was transferred to Holy Cross Hospital from the defendant nursing home. T admitting diagnosis is infected multiple decubitus ulcers. A consultation of the same day by a Dr. Jayasanker, M.D., gives the following history , examination and impression:



The patient is an 80 year old male who is being seen at the request of Dr. Rupani regarding multiple pressure ulcers. History and Physical Examination has been reviewed. Patient appears to be bed bound. He responds by verbal muttering and does not speak. On examination, the following findings are noted. There is a large sacral ulcer about 15cm or diameter. There is some granulation tissue and some necrotic tissue on these ulcers. Patient has multiple ulcerations of both feet and ankle area, multiple. There is swelling of the feet and ankles, foul-smelling discharge and pedal pulsations are not well felt. Impression Multiple pressure ulcers. Recommendations: Tetanus toxoid, culture and sensitivity appropriate antibiotics and x-ray of both feet. Stage 4 Kregg's bed. Will need debribement. Silvadene cream dressings to these wounds at the present time. Nutritiona evaluation.

An x-ray ordered on 7/17/2002 and reported on 7/22/2002 shows considerable swelling of both feet with degenerative changes of both feet and both ankles.

An arterial blood flow study ordered on 7/20/2002 and reported on 7/21/2002 shows an abnormal but limited study revealing significant occlusion of the right popliteal artery and small vessel disease of the feet.

A surgical debribement was performed.

The patient was readmitted to Holy Cross on 8/13/2002 with sepsis. The patient was in mild respitory distress.

An 8/15/2002 consultation report by Dr. Kumar showed a past history of hypertension, CVA dementia and decubitus ulcer.

On 8/21/2002, a bilateral above the knee amputation was performed due to gangrene in both lower extremities.

The patient was readmitted on 9/27/2002 with a final diagnosis of sepsis.

Edema was documented in the scrotal and thigh area.

Mr. Paige subsequently died on October 14, 2002. The immediate cause of death was septicemia

It is clear to me that Mr. Paige developed decubitus ulcers while in the defendant's nursing home and due to the above claims of negligence the patient condition worsened necessitating the above knee amputations and caused his death due to septicemia. In my opinion, negligence has occurred in the course of medical treatment by the nursing home and its agents. The ulcers occurred while under the care and treatment of the defendant nursing home and while Mr. Paige was under their control and management. That in the normal course of events, this injury and condition would have not occurred if the defendant had used a reasonable standard of professional care while the ulcers were under the control and management.

08CV1995
JUDGE GOTTSCHALL
MAGISTRATE JUDGE NOLAN

# Exhibit B

# LEXINGTON INSURANCE COMPANY

Wilmington, Delaware

(A Capital Stock Insurance Company)

Administrative Offices: 200 State Street, Boston, Massachusetts 02109

### HEALTHCARE PROFESSIONAL LIABILITY - CLAIMS MADE AND
### HEALTHCARE GENERAL LIABILITY - CLAIMS MADE
### FOR LONG TERM CARE FACILITIES

### DECLARATIONS

Various provisions in the General Policy Provisions and Conditions and Coverage Parts restrict coverage. There may be both occurrence coverages and claims made coverages in this Policy. Claims made coverage is limited to liability for claims first made against an Insured during the policy period or any extended reporting period, if applicable.

Please read all General Policy Provisions and Conditions and Coverage Parts carefully to determine rights, duties, and what is and what is not covered. A complete Policy includes the Declarations, General Policy Provisions and Conditions, and the applicable Coverage Parts.

POLICY NUMBER:          6790997          RENEWAL OF NUMBER: NEW

Item 1.   (a) FIRST NAMED INSURED:     E M I ENTERPRISES, INC
          (b) OTHER NAMED INSURED(S):

Item 2.   ADDRESS:                     3737 W ARTHUR AVE
                                       LINCOLNWOOD, IL 60645

Item 3.   (a) RETROACTIVE DATE - HEALTHCARE PROFESSIONAL LIABILITY AND HEALTHCARE GENERAL
              LIABILITY CLAIMS MADE COVERAGE PARTS: 03/15/2002
          (b) POLICY PERIOD:  From: March 15, 2002                     To: March 15, 2003
                              at 12: 01 a. m. Standard Time at your mailing address shown above.
          (c) OPTIONAL EXTENDED REPORTING PERIOD:

Item 4.   DESCRIPTION OF OPERATIONS:

Item 5.   LIMITS OF INSURANCE:
          (a) Healthcare Professional Liability
              Aggregate Limit                                  $3,000,000
              Each Medical Incident                            $1,000,000
              Deductible                                       $250,000
              Deductible Aggregate                             N/A
          (b) Healthcare General Liability
              Aggregate Limit                                  $3,000,000
              Products/Completed Operations Aggregate Limit    $3,000,000
              Each Occurrence Limit                            $1,000,000
              Personal/Advertising Injury Limit                $1,000,000
              Fire Damage Limit                                $50,000        Each Fire
              Medical Expense Limit                            $5,000         Each Injured Person
              Deductible                                       $250,000
              Deductible Aggregate                             N/A

Item 6.   PREMIUM:  $1,912,600.00

Item 7.   FORMS AND ENDORSEMENTS:  See attached schedule

Item 8.   PRODUCER NAME AND ADDRESS:  HEATH INSURANCE BROKERS INC
                                      300 S. WACKER DR., STE 1080
                                      CHICAGO, IL 60606

By: _____          By: _____
    Countersignature (In States Where Applicable)       Authorized Representative

74961 (4/01)
HC0035

*Archive Copy*

FORMS SCHEDULE

Named Insured:     E M I ENTERPRISES, INC

Policy Number:          6790997
Effective 12:01 AM:  March 15, 2002

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | Healthcare PL-CM & Healthcare GL-CM | 74961 | (04/01) |
| | General Policy Provisions and Conditions | 74881 | (01/00) |
| | Healthcare GL-CM Coverage Part | 75018 | (02/00) |
| | Healthcare PL-CM Coverage Part | 75017 | (02/00) |
| | Sch.of Oth.Named Insds.-Prof.Liab.CM & Gen.Liab.CM | 74777 | (12/99) |
| 1 | Schedule of Locations Endorsement | 74780 | (12/99) |
| 2 | Sexual Misconduct - Specific Individual Exclusion | 76097 | (11/01) |
| 3 | Terrorism Exclusion | 79110 | (12/01) |
| 4 | Aggregate Limits Endorsement | 75020 | (02/00) |
| 5 | Minimum Earned Premium Endorsement | 74778 | (12/99) |
| 6 | Aggregate Limits of Insurance per Location End. | 74764 | (12/99) |
| 7 | Self Insured Retention Endorsement | MNSCPT | (03/02) |

*Archive Copy*

**LEXINGTON INSURANCE COMPANY**
**WILMINGTON, DELAWARE**
**ADMINISTRATIVE OFFICES: 200 STATE STREET, BOSTON, MA 02109**
**(A Capital Stock Insurance Company)**

*HEALTHCARE PROFESSIONAL LIABILITY*
*AND HEALTHCARE GENERAL LIABILITY*
*FOR LONG TERM CARE FACILITIES*

**GENERAL POLICY PROVISIONS AND CONDITIONS**

Various provisions in the General Policy Provisions and Conditions and Coverage Parts restrict coverage. There may be both occurrence coverages and claims made coverages in this Policy. Please read all General Policy Provisions and Conditions and Coverage Parts carefully to determine rights, duties, and what is and what is not covered. A complete Policy includes the Declarations, General Policy Provisions and Conditions, and the applicable Coverage Parts.

████████████████████████████████████████████████

A.   **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about **your** goods, products or services for the purpose of attracting customers or supporters.

B.   **Auto** means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto**, however, does not include **mobile equipment**.

C.   **Biomedical Waste** means a biological agent or condition including, but not limited to, an infectious organism or unsafe laboratory condition that may cause or result in **bodily injury** or **property damage**.

D.   **Bodily Injury** means physical injury, sickness or disease sustained by any person, including death resulting from any of these at any time. **Bodily injury** does not include emotional distress or mental anguish unless due to physical injury, sickness or disease.

E.   **Criminal prosecution** means any governmental action for enforcement of criminal laws, including offenses, conviction for which could result in imprisonment.

F.   **Defense Costs** means:

   1.   Fees charged by an attorney designated by **us**; and

   2.   Other fees, costs and expenses incurred by **us** in the investigation, adjustment, defense and appeal of a claim, other than the specific items listed in GENERAL POLICY PROVISIONS AND CONDITIONS - Section II. OTHER PAYMENTS UNDER THIS POLICY.

   **Defense costs** does not include salary charges or the expenses of **our** regular employees.

G.   **Employee** means a person paid by **you**. It includes a **leased worker** but does not include a **temporary worker** or independent contractor.

H.   **Executive Officer** means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

I.   **Impaired Property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

1.  It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate, or dangerous; or

2.  **You** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  The repair, replacement, adjustment or removal of **your product** or **your work**; or

2.  The fulfilling of the terms of the contract or agreement by **you**.

J.  **Insured Contract** means:

1.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an **insured contract**;

2.  A sidetrack agreement;

3.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5.  An elevator maintenance agreement; or

6.  That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph 6. does not include that part of any contract or agreement:

    a.  That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    b.  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        i.  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings, designs and specifications; or

        ii. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    c.  Under which **you**, if an architect, engineer, or surveyor, assume liability for **bodily injury** or **property damage** arising out of **your** rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

K.  **Leased Worker** means a person leased to **you** by a labor leasing firm, under an agreement between **you** and the labor leasing firm, to perform duties related to the operations as described in the Declarations and which are at **your** direction. **Leased worker** does not include a **temporary worker**.

L. **Loading or Unloading** means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or **auto**;

2. While it is in or on an aircraft, watercraft or **auto**; or

3. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

But **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or **auto**.

M. **Medical Incident** means any act, error or omission in the providing of or failure to provide **professional services**.

N. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment and including, but not limited to:

1. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises **you** own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles other than those described in Items 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles other than those described in Items 1, 2, 3, or 4 above that are maintained primarily for purposes other than the transportation of persons or cargo.

Self-propelled vehicles, however, with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. Equipment designed primarily for:

      i. Snow removal;

      ii. Road maintenance, but not construction or resurfacing; or

      iii. Street cleaning;

   b. Cherry pickers and similar devices mounted on **auto** or truck chassis and used to raise or lower workers; and

      c.     Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.    **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

P.    **Patient** means a person seeking or receiving, either on an inpatient, outpatient or emergency basis, any form of medical, surgical, dental or nursing care or any service or treatment.

Q.    **Personal and Advertising Injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

    1.    False arrest, detention, or imprisonment;

    2.    Malicious prosecution;

    3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

    4.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service;

    5.    Oral or written publication of material that violates a person's right of privacy;

    6.    The use of another's advertising idea in **your advertisement**;

    7.    Infringing upon another's copyright, trade dress or slogan in **your advertisement**.

R.    **Policy Period** means the period commencing on the inception date shown on the Declarations and ending on the earlier of the expiration date or the effective date of cancellation of the Policy.

S.    **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, but is not limited to, **biomedical waste** and materials to be recycled, reconditioned or reclaimed.

T.    **Products-Completed Operations Hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** EXCEPT:

    1.    Products that are still in **your** physical possession; or

    2.    Work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

        a.    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        b.    When all of the work called for in **your** contract has been completed.

        c.    When all of the work to be done at the job site has been completed if **your** contract calls for work at more than one job site.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include **bodily injury** or **property damage** arising out of:

1. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by **you**, and that condition was created by the **loading or unloading** of that vehicle by any Insured;

2. The existence of tools, uninstalled equipment, or abandoned or unused materials; or

3. Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

U. **Professional Services** means:

1. Medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food or beverages in connection with such services; the practice of nuclear medicine; the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or the handling or treatment of deceased human bodies, including, but not limited to, autopsies, organ donation or other procedures;

2. Services by any person as a member of a formal accreditation, standards review or similar professional board or committee of any Insured; or

3. Supervising, teaching, proctoring others at **your** request.

V. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. Solely with respect to any **Bodily Injury** and **Property Damage** Coverage of this Policy, all such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

W. **Suit** means a civil proceeding in a court to which damages under this insurance applies. **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which an Insured must submit or does submit with **our** consent; or

2. Any other alternative dispute resolution proceeding, in which such damages are claimed and to which an Insured submits with **our** consent.

X. **Temporary Worker** means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload requirements.

Y. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. **You;**

   b. Others trading under **your** name; or

   c. A person or organization whose business or assets **you** have acquired; and

2. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

2.   The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

Z.   **Your Work** means:

1.   Work or operations performed by **you** or on **your** behalf; and

2.   Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

2.   Providing of or failure to provide warnings or instructions.

███████████████████████████████████████████████

A.   In addition to the Limits of Insurance applicable to this Policy, **we** shall pay, with respect to any **suit we** defend:

1.   All expenses **we** incur.

2.   Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which any **bodily injury** liability coverage applies. **We** do not have to furnish these bonds.

3.   The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. **We** do not have to furnish these bonds.

4.   All reasonable expenses incurred by an Insured at **our** request to assist **us** in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $500 a day because of time off from work.

5.   Pre-judgment interest awarded against the Insured on that part of the judgment **we** pay. If **we** make an offer to pay the applicable Limit of Insurance, **we** will not pay any pre-judgment interest based on that period of time after the offer.

6.   All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

7.   All costs taxed against the Insured in the **suit**.

B.   With respect to the HEALTHCARE GENERAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES only, if **we** defend an Insured against a **suit** and an indemnitee of the Insured is also named as a party to the **suit**, **we** will defend that indemnitee if all of the following conditions are met:

1.   The **suit** against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract**;

2.　This insurance applies to such liability assumed by the Insured;

3.　The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the Insured in the same **insured contract;**

4.　The allegations in the **suit** and the information **we** know about the **occurrence** are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

5.　The indemnitee and the Insured ask **us** to conduct and control the defense of that indemnitee against such **suit** and agree that **we** can assign the same counsel to defend the Insured and the indemnitee; and

6.　The indemnitee:

    a.　Agrees in writing to:

        i.　Cooperate with **us** in the investigation, settlement or defense of the **suit.**

        ii.　Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **suit;**

        iii.　Notify any other insurer whose coverage is available to the indemnitee; and

        iv.　Cooperate with **us** with respect to coordinating other applicable insurance available to the indemnitee; and

    b.　Provides **us** with written authorization to:

        i.　Obtain records and other information related to the **suit;** and

        ii.　Conduct and control the defense of the indemnitee in such **suit.**

So long as the above conditions are met, attorneys fees incurred by **us** in the defense of that indemnitee, necessary litigation expenses incurred by **us** and necessary litigation expenses incurred by the indemnitee at **our** request will be paid as Other Payments Under This Policy. Notwithstanding the provisions of paragraph III. B. 2. b. of the HEALTHCARE GENERAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES such payments will not be deemed to be damages for **bodily injury** and **property damage** and will not reduce the Limits of Insurance.

**Our** obligation to defend an Insured's indemnitee and to pay for attorney's fees and necessary litigation expenses as Other Payments Under This Policy ends when:

1.　**We** have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

2.　The conditions set forth above, or the terms of the agreement described in paragraph 6. above, are no longer met.

████████████████████████████████████████

A.　Coverage Territory

**We** will cover an **occurrence**, offense or **medical incident** in the United States of America, its territories and possessions, or Puerto Rico, provided a claim is made and **suit** is brought in the United States of America, its territories and possessions, or Puerto Rico.

B.    Legal Action Against Us

No person or organization has a right under this Policy:

1.    To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from **you**; or

2.    To sue **us** under this Policy, unless all this Policy's terms have been complied with in full.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against **you** obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of any Insuring Agreement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, **you** and the claimant or the claimant's legal representative.

C.    Other Insurance

If there is other insurance which applies to the loss resulting from an **occurrence**, offense or **medical incident**, the other insurance must pay first. This Policy applies to the amount of loss which is more than:

1.    The Limits of Insurance of the other insurance; and

2.    The total of all deductibles and self-insured amounts under all such other insurance.

D.    Other Member Companies of the American International Group, Inc. Policies

Two or more insurance policies may be issued by **us** or other member companies of American International Group, Inc. These policies may provide coverage for:

1.    Claims or **suits** arising from the same **medical incident**; or

2.    Persons or organizations covered in those policies that are jointly and severally liable.

In such a case, **we** shall not be liable under this Policy for an amount greater than the proportion of the loss that this Policy's applicable Limit of Insurance bears to the total applicable Limits of Insurance under all such policies.

In addition, the total amount payable under all such policies is the highest, single applicable Limit of Insurance among all such policies.

E.    Separation of Insureds

Except with respect to the Limits of Insurance and deductible, and except with respect to any rights or duties specifically assigned in this Policy to the Named Insured, this insurance applies:

1.    As if each Insured were the only Insured; and

2.    Separately to each Insured against whom claim is made or **suit** is brought.

F.    Bankruptcy

**Your** bankruptcy or insolvency will not relieve **us** of **our** obligations under this Policy.

G.    Representations

By accepting this Policy, the First Named Insured agrees that:

1.   The statements in the Declarations and/or Applications made part of this Policy are accurate and complete;

2.   Those statements are based upon representations made to **us** by **you**; and

3.   **We** have issued this Policy in reliance upon **your** representations.

H.   Transfer Of Rights Of Recovery Against Others To Us

If an Insured has rights to recover all or part of any payment **we** have made under this Policy, those rights are transferred to **us**. An Insured shall do nothing to impair them. At **our** request, an Insured will bring **suit** or transfer those rights to **us** and help **us** enforce them.

I.   Conformance To Statute

To the extent that this Policy conflicts with any applicable law, statute, or regulation, this Policy shall conform to the minimum requirements of that law, statute, or regulation.

J.   Assignment

**Your** interest is not assignable without **our** written consent.

K.   Special Rights And Duties Of First Named Insured

The First Named Insured shall act on behalf of all Insureds as to:

1.   Giving and receiving notice of cancellation;

2.   Payment of premiums and receipt of return premiums;

3.   Acceptance of any endorsements to this Policy;

4.   Purchasing or deciding not to purchase the Optional Extended Reporting Period Endorsement, if applicable; or

5.   Making changes in this Policy or any coverage part with **our** consent.

This Policy can only be changed by a written endorsement **we** issue and make a part of this Policy.

L.   Inspections And Surveys

**We** have the right but are not obligated to:

1.   Make inspections and surveys at any time;

2.   Give the First Named Insured reports on the conditions **we** find; and

3.   Recommend changes.

Any inspections, surveys, reports, or recommendations are related only to insurability and the premiums to be charged.

**We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

**We** do not warrant that conditions:

1.   Are safe or healthful; or

2.   Comply with laws, regulations, codes, or standards.

This condition applies not only to **us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports, or recommendations.

M.    Titles Of Paragraphs

Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.

N.    Service of Suit

In the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 200 State Street, Boston, Massachusetts 02109 or his or her representative, and that in any suit instituted against **us** upon this Policy, **we** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action or suit instituted by **you** or on **your** behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

This Policy may be canceled by the First Named Insured by surrendering it to **us** or any of **our** authorized representatives or by mailing to **us** written notice stating when thereafter the cancellation shall be effective.

We may cancel this Policy by mailing or delivering a written notice of cancellation to the First Named Insured at the address shown in this Policy stating when, not less than 30 days thereafter, cancellation will be effective. However, if **we** cancel this Policy because the First Named Insured has failed to pay a premium when due, this Policy may be canceled by **us** by mailing or delivering a written notice of cancellation to the First Named Insured at the address shown in this Policy stating when, not less than 10 days thereafter, such cancellation will be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery of such written notice either by the First Named Insured or by **us** shall be the equivalent to mailing. If the First Named Insured cancels, the unearned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, unearned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, **we** have caused this policy to be signed by **our** Executive Officer and Secretary and signed on the Declarations page by **our** duly Authorized Representative, where required by law.

*Elizabeth M. Tuck*
_____
SECRETARY

*L. H. Kelley*
_____
CHAIRMAN OF THE BOARD AND CEO

74881 (1/00)
HC0023

***Archive Copy***

10

**LEXINGTON INSURANCE COMPANY**
**WILMINGTON, DELAWARE**
ADMINISTRATIVE OFFICES: 200 STATE STREET, BOSTON, MA 02109
**(A Capital Stock Insurance Company)**

## HEALTHCARE GENERAL LIABILITY CLAIMS MADE COVERAGE PART
### *FOR LONG TERM CARE FACILITIES*

Various provisions in the General Policy Provisions and Conditions and Coverage Parts restrict coverage. Please read all General Policy Provisions and Conditions and Coverage Parts carefully to determine rights, duties, and what is and what is not covered. A complete Policy includes the Declarations, General Policy Provisions and Conditions, and the applicable Coverage Parts.

**This coverage part provides claims made coverage only. Coverage is limited to liability for claims first made against an Insured during the policy period or any extended reporting period, if applicable. Please review the policy carefully and discuss the policy with your insurance representative.**

Throughout this Policy the words **you** and **your** mean the First Named Insured, including any other Named Insured. The words **we**, **us** and **our** mean the Company providing insurance under this Policy. Other words and phrases that appear in bold are defined in Section 1. Definitions Applicable To All Coverage Parts of the General Policy Provisions and Conditions.

In consideration of the payment of the premium and in reliance upon the statements in the Application, which is attached hereto and made a part of this Policy, and upon the Declarations, **we** agree as follows:

████████████████████████████████████

A. **Bodily Injury and Property Damage**

We will pay those sums that an Insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this Coverage Part applies.

This Coverage Part applies to **bodily injury** and **property damage** only if:

1. The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the coverage territory; and

2. The **bodily injury** or **property damage** occurs after the retroactive date but before the end of the **policy period**.

3. A claim for damages because of the **bodily injury** or **property damage** is first made against an Insured during the **policy period** or the extended reporting period, if applicable.

In addition to **our** Limit of Insurance **we** will also pay **defense costs**. **We** have the right and duty to defend and appoint an attorney to defend any **suit** against an Insured for a covered claim, and **we** will:

1. Do so even if any of the charges of the claim are groundless, false or fraudulent; and

2. Investigate and settle any claim or **suit** to the extent **we** believe is appropriate.

**Our** duty to defend any **suit** ends, and **we** may withdraw from the defense, after the applicable Limit of Insurance has been exhausted by settlements, judgments, awards and interest accruing thereon prior to entry of judgment or issuance of award.

B.    **Personal and Advertising Injury**

**We** will pay those sums that an Insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this Coverage Part applies.

This Coverage Part applies to **personal and advertising injury** only if:

1.    The **personal and advertising injury** is caused by an **occurrence** that takes place in the coverage territory; and

2.    The **personal and advertising injury** occurs after the retroactive date but before the end of the **policy period**;

3.    A claim for damages because of the **personal and advertising injury** is first made against an Insured during the **policy period** or the extended reporting period, if applicable.

In addition to **our** Limit of Insurance **we** will also pay **defense costs**. **We** have the right and duty to defend and appoint an attorney to defend any **suit** against an Insured for a covered claim, and **we** will:

1.    Do so even if any of the charges of the claim are groundless, false or fraudulent; and

2.    Investigate and settle any claim or **suit** to the extent **we** believe is appropriate.

**Our** duty to defend any **suit** ends, and **we** may withdraw from the defense, after the applicable Limit of Insurance has been exhausted by settlements, judgments, awards and interest accruing thereon prior to entry of judgment or issuance of award.

C.    **Medical Expenses**

**We** will pay medical expenses as described below for **bodily injury** caused by an accident:

1.    On premises **you** own or rent;

2.    On ways next to premises **you** own or rent; or

3.    Because of **your** operations;

Provided that:

1.    The accident takes place in the coverage territory and after the retroactive date but before the end of the **policy period**;

2.    The expenses are incurred and reported to **us** within one year of the date of the accident; and

3.    The injured person submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.

**We** will make these payments regardless of fault. These payments will not exceed the applicable Limits of Insurance. **We** will pay reasonable expenses for:

1.    First aid administered at the time of an accident;

2.    Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3.    Necessary ambulance, hospital, professional nursing and funeral services.

The following are Insureds:

A.  **You.**

B.  An individual and the individual's spouse are Insureds, but only with respect to the conduct of **your** business named in the Declarations of which he or she is the sole owner.

C.  A partnership or joint venture is an Insured, but only if the partnership or joint venture is specifically listed as a Named Insured. The partnership's partners or joint venture's members and their spouses are also Insureds, but only with respect to the conduct of **your** business.

D.  A limited liability company is an Insured, but only if the limited liability company is specifically listed as a Named Insured. The limited liability company's members are also Insureds, but only with respect to the conduct of **your** business. **Your** managers are Insureds but only with respect to their duties as **your** managers.

E.  If **you** are designated in the Declarations as other than partnership, joint venture or limited liability company, the organization so designated and any **executive officer**, director or stockholder thereof while acting within the scope of his duties for **you**.

F.  **Your employees**, other than **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), are Insureds, but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.

No **employee**, however, is an Insured for:

1.  **Bodily injury, personal and advertising injury:**

    a.  To **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), or to a co-employee while in the course of his or her employment or while performing duties related to the conduct of **your** business;

    b.  To the spouse, child, parent, brother, or sister of that co-employee as a consequence of paragraph 1.a. above;

    c.  For which there is an obligation to share damages with or repay another who must pay damages due to an injury described in 1.a. or 1.b. above; or

    d.  Arising out of his or her providing or failing to provide professional healthcare services.

2.  **Property Damage** to property:

    a.  Owned, occupied, or used by, or

    b.  Rented to, in the care of, custody or control of, or over which physical control is being exercised for any purpose by,

    **you**, any of **your** employees, any partner or member (if **you** are a partnership or a joint venture), or any member (if **you** are a limited liability company).

G.  Any student enrolled in a training program in connection with **your professional services**, but only when acting within the scope of his or her duties and at **your** direction. Any of **your** authorized volunteer workers, other than a healthcare provider, but only while acting within the scope of their duties as such and at **your** direction.

H.  **Your** legal representative if **you** die, but only with respect to his or her duties as a legal representative.

I.  **Your** superintendents, administrators, directors, department heads and heads of the medical staff, but only in their capacity as such.

J.  Members of **your** boards and committees, but only for conduct arising out of their duties as board or committee members and those who execute orders from **your** boards or committees, but only while in the course and scope of executing those orders.

K.  **Your** trustees and governors, but only for the conduct of **your** business within the course and scope of their employment or their duties as trustees or governors.

L.  Any person (other than **your** employee) or any organization while acting as **your** real-estate manager.

M.  Any person or organization having proper temporary custody of **your** property if **you** die, but only:

    1.  With respect to liability arising out of the maintenance or use of that property; and

    2.  Until **your** legal representative has been appointed.

N.  With respect to **mobile equipment** registered in **your** name under any motor vehicle registration law, any person is an Insured while driving such equipment along a public highway with **your** permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. No person or organization, however, is an Insured with respect to:

    1.  **Bodily injury** to a co-employee of the person driving the equipment; or

    2.  **Property damage** to property owned by, rented to, occupied by **you**, in **your** charge, or the employer of any person who is an Insured under this provision.

No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

---

A.  With respect to Insuring Agreements A. **Bodily Injury** and **Property Damage**, B. **Personal and Advertising Injury**, and C. Medical Expenses of this Coverage Part, **we** will not defend or pay claims for:

    1.  Workers Compensation and Similar Laws

        Any obligation an Insured has under a workers compensation, disability benefits, or unemployment compensation law or any similar law.

    2.  Employer's Liability

        **Bodily injury** to:

        a.  An employee of **yours** arising out of and in the course of:

            1.  Employment by **you**; or

            2.  Performing duties related to the conduct of **your** business; or

        b.  The spouse, child, parent, brother, or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

a.   Whether **you** may be liable as an employer or in any other capacity; and

b.   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by **you** under an **insured contract**.

3.   Damage to Property

**Property damage** to:

a.   Property **you** own, rent, or occupy;

b.   Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;

c.   Property loaned to **you**;

d.   Personal property in **your** care, custody, or control;

e.   That particular part of the real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or

f.   That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

With respect to any **Property Damage** Coverage of this Policy:

Paragraph b. of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you**.

Paragraphs c., d., e., and f. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph f. of this exclusion does not apply to **property damage** included in the **products-completed operations hazard**.

4.   War

War, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

5.   Pollution

Any liability arising from:

a.   The actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape of **pollutants**;

b.   Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**; or

c.   Any cost, charge, expense or request for reimbursement arising out of a. or b. above.

This exclusion shall not apply to damages arising out of heat, smoke or fumes from a **hostile fire**. As used in this exclusion, **hostile fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

Exclusions 1. through 5. do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Limits of Insurance (Section IV.).

6.    Employment Practices

Any liability arising out of any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges.

7.    Dishonest Practices

Dishonest, fraudulent, criminal or malicious acts, errors, or omissions; however, **we** will defend claims alleging such acts, errors or omissions until final adjudication.

8.    Nuclear Hazards

Any liability arising out of nuclear fission, nuclear fusion or radioactive contamination.

9.    Asbestos

Any liability arising out of the manufacture, mining, use, sale, installation, removal, abatement, clean-up, distribution or exposure to asbestos, asbestos containing waste materials, asbestos waste, asbestos fibers, asbestos products and asbestos dust.

10.    Sexual Misconduct

Any sexual physical contact, sexual abuse or sexual verbal harassment by any Insured including **you**. However, this exclusion shall not apply to **you** for allegations of sexual physical contact, sexual abuse or verbal sexual harassment against **you**, provided that an Insured other than **you** committed these offenses and **you** did not direct or have knowledge of the sexual physical contact, sexual abuse or verbal sexual harassment. **We** will defend claims alleging such acts until final adjudication.

11.    ERISA

Any liability arising out of the Employee Retirement Income Security Act (ERISA) of 1974 or amendments thereto, or any similar state law.

12.    Discrimination/Humiliation

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any claims resulting from humiliation or mental anguish, arising out of discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

13.    Insured vs. Insured

Any claims made by one Insured against another Insured.

14.    Other Coverage Parts

Any claims brought under any other Coverage Part of this Policy other than this Healthcare General Liability Claims Made Coverage Part, unless otherwise stated.

15.    Penalties

Any fines, penalties, punitive, exemplary or multiplied damages.

16.    Patients or Residents

Any **bodily injury** or **property damage** sustained by your patients or residents.

B.    Additionally, with respect to Insuring Agreement A. **Bodily Injury** and **Property Damage** of this Coverage Part, **we** will not defend or pay claims for:

1.    Expected Or Intended Injury

Damages or harm expected or intended from an Insured's standpoint. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

2.    Contractual Liability

Liability arising from **bodily injury** or **property damage** for which **you** are obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

a.    That **you** would have in the absence of the contract or agreement; or

b.    Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of **bodily injury** or **property damage**, provided:

i.    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

ii.    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

3.    Damage to **Your Product**

**Property damage** to **your product** arising out of it or any part of it.

4.    Damage to **Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

5.    Damage to **Impaired Property** or Property Not Physically Injured

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:

a.    A defect, deficiency, inadequacy or dangerous condition in **your product** or **your** work; or

b.    A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

6.    Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.    **Your product**,

b.    **Your work**, or

c.    Impaired property,

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

7.    Liquor Liability

Which an Insured may be held liable by reason of:

a.    Causing or contributing to the intoxication of any person;

b.    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.    Any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

8.    Aircraft, Auto, or Watercraft

Any liability arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto,** or watercraft owned or operated by or rented or loaned to **you**. Use includes operation and **loading** or **unloading**.

This exclusion shall not apply to:

a.    A watercraft while ashore on premises **you** own or rent;

b.    A watercraft **you** do not own that is:

        i.    Less than 26 feet long; and

        ii.    Not being used to carry persons or property for a charge;

c.    Parking an **auto** on, or on the ways next to premises **you** own or rent, provided the **auto** is not owned by or rented or loaned to **you;**

d.    Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft;

e.    The operation of any of the equipment listed in paragraph 6.b. or 6.c. of the definition of **mobile equipment**; or

f.    **Loading** or **unloading** of patients or residents.

9.    Mobile Equipment

Any liability arising out of:

a.    The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any Insured; or

***Archive Copy***          LTCGL - 8

      b.    The use of **mobile equipment** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

Exclusions 3. through 9. do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Limits of Insurance (Section IV.).

C.    Additionally, with respect to Insuring Agreement B. **Personal and Advertising Injury** of this Coverage Part, **we** will not defend or pay for claims:

    1.    Caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**;

    2.    Arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity;

    3.    Arising out of oral or written publication of material whose first publication took place before the beginning of the **policy period**;

    4.    Arising out of a criminal act committed by or at the direction of any Insured;

    5.    For which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement;

    6.    Arising out of a breach of contract, except an implied contract to use another's advertising idea in **your advertisement**;

    7.    Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in **your advertisement**;

    8.    Arising out of the wrong description of the price of goods, products or services stated in **your advertisement**; or

    9.    Committed by an Insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion shall not apply to paragraphs U. 1. 2. and 3. of **personal and advertising injury** under Section I. Definitions Applicable to All Coverage Parts of the General Policy Provisions and Conditions.

D.    Additionally, with respect to Insuring Agreement C. Medical Expenses of this Coverage Part, **we** will not pay Medical Expenses for **bodily injury**:

    1.    To any Insured;

    2.    To a person hired to do work for or on behalf of **you** or a tenant of **yours**;

    3.    To a person injured on that part of premises owned or rented by **you** that the person normally occupies;

    4.    To a person, whether or not an employee of any Insured, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law;

    5.    To a person injured while taking part in athletics;

    6.    Included within the **products-completed operations hazard**; or

    7.    Excluded under Insuring Agreement A of this Coverage Part.

A.  The Limits of Insurance shown in the Declarations for Healthcare General Liability for Long Term Care Facilities and the rules below fix the most **we** will pay regardless of the number of:

1.  Insureds;

2.  Claims submitted or **suits** brought; or

3.  Persons or organizations making claims or bringing **suits**.

B.  The Aggregate Limit is the most **we** will pay for the sum of:

1.  Damages under Insuring Agreement A. **Bodily Injury** and **Property Damage**, except damages because of **bodily injury** or **property damage** included in the **products-completed operations hazard**;

2.  Damages under Insuring Agreement B. **Personal and Advertising Injury**; and

3.  Medical expenses under Insuring Agreement C.

C.  The **Products-Completed Operations** Aggregate Limit is the most **we** will pay under Insuring Agreement A for damages because of **bodily injury** and **property damage** included in the **products-completed operations hazard**.

D.  Subject to B. above, the **Personal and Advertising Injury** Limit is the most **we** will pay under Insuring Agreement B, for the sum of all damages because of all **personal and advertising injury** sustained by any one person or organization.

E.  Subject to B. or C. above, whichever applies, the each **occurrence** limit is the most **we** will pay for the sum of:

1.  Damages under Insuring Agreement A; and

2.  Medical expenses under Insuring Agreement C;

because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

F.  Subject to E. above, the Fire Damage Limit is the most **we** will pay under Insuring Agreement A. for damages because of **property damage** to premises rented to **you** or temporarily occupied by **you** with permission of the owner, arising out of any one fire.

G.  Subject to E. above, the Medical Expense Limit is the most **we** will pay under Insuring Agreement C. for all medical expenses because of **bodily injury** sustained by any one person.

H.  The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period. Any remaining period of less than 12 months shall be included in the last preceding annual period, starting with the beginning of the **policy period** shown in the Declarations. If the **policy period** is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

I.  All claims arising from continuous, related, or repeated **occurrences** shall be treated as arising out of one claim. Only the Policy in effect when the first such claim is made shall apply to all such claims.

██████████████████████████████████████████████████

A.   The First Named Insured shall be responsible for the deductible amount shown in the Declarations. Expenses **we** incur in investigating and defending claims and **suits** are included in the deductible. The deductible applies to each **occurrence** and the First Named Insured shall not insure against it without **our** written consent. All claims arising from a single **occurrence** or continuous, related, or repeated **occurrences** shall be subject to one deductible.

B.   The deductible aggregate is the total amount of damages arising out of all deductibles for all **occurrences** during the **policy period**.

C.   **We** may pay all or part of the deductible to settle a claim or **suit**. The First Named Insured agrees to repay **us** promptly after **we** notify the First Named Insured of the settlement.

██████████████████████████████████████████████████

In addition to the GENERAL POLICY PROVISIONS AND CONDITIONS - Section III. CONDITIONS APPLICABLE TO ALL COVERAGE PARTS, the following Conditions shall apply to Insuring Agreements A., B. and C. of this Coverage Part:

A.   Automatic Extended Reporting Period

   1.   If this Coverage Part is canceled or not renewed for any reason other than non-payment of premium, and if the Optional Extended Reporting Period Endorsement is not purchased, then **we** will provide an automatic extended reporting period of sixty (60) days, starting with the end of the **policy period**, during which claims arising out of **occurrences** which take place on or after the retroactive date but before the end of the **policy period** may be first made.

   2.   The automatic extended reporting period does not extend the **policy period** or change the scope of coverage provided. **We** will consider any claim first made during the automatic extended reporting period to have been made on the last day of the **policy period**.

   3.   The automatic extended reporting period, however, will not apply to claims if other insurance purchased by Insureds covers them or would cover them if its limits of insurance had not been exhausted.

   4.   The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for the automatic extended reporting period.

B.   Optional Extended Reporting Period

   1.   If the First Named Insured or **we** cancel or do not renew this insurance, the First Named Insured shall have the option to buy an Optional Extended Reporting Period Endorsement, beginning with the end of the **policy period**. The additional premium for and the term of the Optional Extended Reporting Period Endorsement shall be as stated in Item 3.c. of the Declarations. The First Named Insured can not purchase this Endorsement if **we** cancel for non-payment of premium.

   2.   The Optional Extended Reporting Period Endorsement applies only to claims first made against the Insured during the Optional Extended Reporting Period and arising from **occurrences** which take place on or after the retroactive date but before the end of the **policy period**. The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for claims under the Endorsement.

3.  To obtain an Optional Extended Reporting Period Endorsement the First Named Insured must request it in writing within sixty (60) days after the **policy period** ends and pay the premium due. If the First Named Insured does so, an Extended Reporting Period Endorsement cannot be canceled. If **we** do not receive the written request and payment within sixty (60) days after the **policy period** ends, the First Named Insured may not exercise this option at a later date.

4.  The insurance provided under the Extended Reporting Period Endorsement is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

5.  Our offer of terms, conditions or premium different from the expiring Policy or Coverage Part shall not be considered a refusal or failure to renew this insurance.

C.  Duties In the Event Of An **Occurrence**, Offense, Claim or **Suit**.

1.  If during the **policy period**, the First Named Insured becomes aware of any **occurrence** or offence which may reasonably be expected to give rise to a claim being made against any Insured, the First Named Insured must notify **us** in writing as soon as practicable. To the extent possible, notice should include:

    a.  How, when, and where the **occurrence** or offense took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the **occurrence** or offense.

    Notice of an **occurrence** or offense is not notice of a claim.

2.  If a claim or **suit** is brought against an Insured arising out of an **occurrence** or offense the First Named Insured must:

    a.  Immediately record the specifics of the claim or **suit** and the date received;

    b.  Provide **us** with written notice of the claim or **suit** as soon as practicable; and

    c.  Immediately send **us** copies of any demands, notices, summonses, or legal papers received in connection with the claim or **suit**.

D.  Assistance and Cooperation

The Insureds shall:

1.  Cooperate with **us** in the investigation, settlement, or defense of the claim or **suit**; and

2.  Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to an Insured because of injury or damage to which this insurance may also apply.

An Insured will not, except at **your** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without **our** consent.

E.  Knowledge and Notice of **Occurrence**

Knowledge of an **occurrence** or offense on the part of the risk management department or on the part of an **executive officer** constitutes knowledge by the First Named Insured. If someone other than the risk management department or an **executive officer** knows but does not tell the First Named Insured, this insurance is not invalidated.

The First Named Insured's unintentional failure to disclose a hazard at the Policy's inception will not prejudice the Insured's rights under this insurance.

**LEXINGTON INSURANCE COMPANY**
**WILMINGTON, DELAWARE**
**ADMINISTRATIVE OFFICES: 200 STATE STREET, BOSTON, MA 02109**
**(A Capital Stock Insurance Company)**

*HEALTHCARE PROFESSIONAL LIABILITY CLAIMS MADE COVERAGE PART*
*FOR LONG TERM CARE FACILITIES*

Various provisions in the General Policy Provisions and Conditions and Coverage Parts restrict coverage. There may be both occurrence coverages and claims made coverages in this Policy. Please read all General Policy Provisions and Conditions and Coverage Parts carefully to determine rights, duties, and what is and what is not covered. A complete Policy includes the Declarations, General Policy Provisions and Conditions, and the applicable Coverage Parts.

**This coverage part provides claims made coverage only. Coverage is limited to liability for claims first made against an Insured during the policy period or any extended reporting period, if applicable. Please review the policy carefully and discuss the policy with your insurance representative.**

Throughout this Policy the words **you** and **your** mean the First Named Insured, including any other Named Insured. The words **we, us** and **our** mean the Company providing insurance under this Policy. Other words and phrases that appear in bold are defined in Section I. Definitions Applicable To All Coverage Parts of the General Policy Provisions and Conditions.

In consideration of the payment of the premium and in reliance upon the statements in the Application, which is attached hereto and made a part of this Policy, and upon the Declarations, **we** agree as follows:

████████████████████████████████████████████████████████

We will pay those amounts that **you** are legally required to pay others as damages resulting from a **medical incident** arising out of **professional services** provided by any Insured. The **medical incident** must take place on or after the retroactive date and before the end of the **policy period**. A claim for a **medical incident** must be first made against an Insured during the **policy period** or the extended reporting period, if applicable.

In addition to **our** Limit of Insurance **we** will also pay **defense costs**. **We** have the right and duty to defend and appoint an attorney to defend any **suit** against an Insured for a covered claim, and **we** will:

1.    Do so even if any of the charges of the claim are groundless, false or fraudulent; and

2.    Investigate and settle any claim or **suit** to the extent **we** believe is appropriate.

**Our** duty to defend any **suit** ends, and **we** may withdraw from the defense, after the applicable Limit of Insurance has been exhausted by settlements, judgments, awards and interest accruing thereon prior to entry of judgment or issuance of award.

████████████████████████████████████████████████████████

The following are Insureds:

A.    **You.**

B.    An individual and the individual's spouse are Insureds, but only with respect to the conduct of **your** business named in the Declarations of which he or she is the sole owner.

C.    A partnership or joint venture is an Insured, but only if the partnership or joint venture is specifically listed as a Named Insured. The partnership's partners or joint venture's members and their spouses are also Insureds, but only with respect to the conduct of **your** business.

D.    A limited liability company is an Insured, but only if the limited liability company is specifically listed as a Named Insured. The limited liability company's members are also Insureds, but only with respect to the conduct of **your** business. **Your** managers are Insureds but only with respect to their duties as **your** managers.

E.    If **you** are designated in the Declarations as other than partnership, joint venture or limited liability company, the organization so designated and any **executive officer**, director or stockholder thereof while acting within the scope of his duties for **you**.

F.    **Your employees**, other than **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), are Insureds, but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.

G.    Any student enrolled in a training program in connection with **your professional services**, but only when acting within the scope of his or her duties and at **your** direction. Any of **your** authorized volunteer workers, other than a healthcare provider, but only while acting within the scope of their duties as such and at **your** direction.

H.    **Your** legal representative if **you** die, but only with respect to his or her duties as a legal representative.

I.    **Your** superintendents, administrators, directors, department heads and heads of the medical staff, but only in their capacity as such.

J.    Members of **your** boards and committees, but only for conduct arising out of their duties as board or committee members and those who execute orders from **your** boards or committees, but only while in the course and scope of executing those orders.

K.    **Your** trustees and governors, but only for the conduct of **your** business within the course and scope of their employment or their duties as trustees or governors.

A.    **We** will not defend or pay claims for:

    1.    Prior Acts

        Any liability arising out of acts, errors or omissions of which an Insured had knowledge prior to the inception date of the **policy period**, if, as of such date, an Insured could reasonably foresee a claim might result.

    2.    Contractual Liability

        Any liability **you** assume under any contract or agreement. This exclusion does not apply to:

        a.    Liability that **you** would have in the absence of a contract or agreement;

        b.    Liability **you** assume in a written contract with:

            1.    A Health Maintenance Organization;

            2.    A Preferred Provider Organization;

            3.    An Independent Practice Association; or

            4.    Any other similar organization;

        but only for such liability as is attributable to an Insured's alleged negligence arising out of **professional services**; or

    c.    A warranty of fitness or quality of any therapeutic agents or supplies an Insured has furnished or supplied in connection with treatment that has been performed.

3.    Anti-Trust

Any liability arising out of actual or alleged involvement in any:

    a.    Antitrust law violation; or

    b.    Agreement or conspiracy to restrain trade.

4.    U.S. Department of Health & Human Services (HHS)

Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an Insured by HHS or by any utilization or quality review organization under contract with HHS.

This exclusion does not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act.

5.    Workers Compensation and Similar Laws

Any obligation an Insured has under a workers compensation, disability benefits, or unemployment compensation law or any similar law.

6.    Employer's Liability

**Bodily injury** to:

    a.    An **employee** of **yours** arising out of and in the course of:

        1.    Employment by **you**; or

        2.    Performing duties related to the conduct of **your** business; or

    b.    The spouse, child, parent, brother, or sister of that **employee** as a consequence of paragraph a. above.

This exclusion applies:

    a.    Whether **you** may be liable as an employer or in any other capacity; and

    b.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

7.    Employment Practices

Any liability arising out of any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges.

This exclusion does not apply to services by any person as a member of **your** formal accreditation, standards review or similar professional board or committee otherwise covered by this Policy.

8.    ERISA

Any liability arising out of the Employee Retirement Income Security Act (ERISA) of 1974 or amendments thereto, or any similar state law.

9.    Damage to Property

Any **property damage.**

10.    War

War, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

11.    Dishonest Practices

Dishonest, fraudulent, criminal or malicious acts, errors, or omissions. However, **we** will defend claims alleging such acts, errors or omissions until final adjudication.

12.    Pollution

Any liability arising from:

a.    The actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape of **pollutants;**

b.    Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants;** or

c.    Any cost, charge, expense or request for reimbursement arising out of a. or b. above.

13.    Nuclear Hazards

Any liability arising out of nuclear fission, nuclear fusion or radioactive contamination.

14.    Asbestos

Any liability arising out of the manufacture, mining, use, sale, installation, removal, abatement, clean-up, distribution or exposure to asbestos, asbestos containing waste materials, asbestos waste, asbestos fibers, asbestos products and asbestos dust.

15.    Sexual Misconduct

Any sexual physical contact, sexual abuse or sexual verbal harassment by any Insured including **you.** However, this exclusion shall not apply to **you** for allegations of sexual physical contact, sexual abuse or verbal sexual harassment against **you,** provided that an Insured other than **you** committed these offenses and **you** did not direct or have knowledge of the sexual physical contact, sexual abuse or verbal sexual harassment. **We** will defend claims alleging such acts until final adjudication.

16.    Discrimination/Humiliation

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any claims resulting from humiliation or mental anguish, arising out of discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

17.    Expected Or Intended Injury

Damages or harm expected or intended from an Insured's standpoint.

18.    Other Coverage Parts

Brought under any other Coverage Part of this Policy other than this Healthcare Professional Liability Claims Made Coverage Part, unless otherwise stated.

19.  Penalties

Any fines, penalties, punitive, exemplary or multiplied damages.

20.  Physicians

Any physician, including any resident, intern, extern, or fellow. This exclusion, however, shall not apply to any physician, including any resident, intern, extern, or fellow, employed by **you** with respect to the following:

a.    Charitable activities approved by the Named Insured;

b.    Participation in employer sponsored continuing medical education courses; or

c.    While acting within the scope of their administrative duties for **you**.

21.  Insured vs. Insured

Made by one Insured against another Insured. This exclusion does not apply to services by any person as a member of **your** formal accreditation, standards review or similar professional board or committee otherwise covered by this Policy.

22.  Hospitals/Laboratories

Any liability arising out of **your** ownership or operation of a hospital or laboratory;

23.  Fee Disputes

Arising from disputes about **your** fees, including collecting fees from any third party;

24.  Failure to have a License

Any liability arising out of **your** failure to have a license as required by law;

25.  Defective Products

Arising from a defective product. This exclusion shall not apply to any drug or pharmaceutical product dispensed by a pharmacist **you** provide.

████████████████████████████████████████████████████████████

A.    The Limits of Insurance shown in the Declarations for Healthcare Professional Liability for Long Term Care Facilities and the rules below fix the most **we** will pay regardless of the number of:

1.    Insureds;

2.    Claims made or **suits** brought; or

3.    Persons or organizations making claims or bringing **suits**.

B.    The Aggregate Limit is the most **we** will pay for the sum of all damages under this Coverage Part.

C.    Subject to paragraph B. above, the Each **Medical Incident** Limit stated in the Declarations, is the most **we** will pay under this Coverage Part for damages arising out of a single **medical incident**.

D.    All claims arising from continuous, related, or repeated **medical incidents** shall be treated as arising out of one **medical incident**. Only the Policy in effect when the first such claim is made shall apply to all such claims.

E.   The Limits of Insurance of this Coverage Part apply separately to claims first made against an Insured during each consecutive annual period. Any remaining period of less than 12 months shall be included in the last preceding annual period, starting with the beginning of the **policy period** shown in the Declarations. If the **policy period** is extended after issuance for an additional period of less th an 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

████████████████████████████████████████████

A.   The First Named Insured shall be responsible for the deductible amount shown in the Declarations. Expenses **we** incur in investigating and defending claims and **suits** are included in the deductible. The deductible applies to each **medical incident** and the First Named Insured shall not insure against it without **our** written consent. All claims arising from a single **medical incident** or continuous, related, or repeated **medical incidents** shall be subject to one deductible.

B.   The deductible aggregate is the total amount of damages arising out of all deductibles for all claims during the **policy period**.

C.   **We may** pay all or part of the deductible to settle a claim or **suit**. The First Named Insured agrees to repay **us** promptly after **we** notify the First Named Insured of the settlement.

████████████████████████████████████████████

In addition to the GENERAL POLICY PROVISIONS AND CONDITIONS - Section III. CONDI-TIONS APPLICABLE TO ALL COVERAGE PARTS, the following Conditions apply to this Coverage Part:

A.   Duties In the Event Of A Claim, **Suit**, or **Medical Incident**

    1.   If during the **policy period**, the First Named Insured shall become aware of any **medical incident** which may reasonably be expected to give rise to a claim being made against any Insured, the First Named Insured must notify **us** in writing as soon as practicable. To the extent possible, notice should include:

        a.   How, when, and where the **medical incident** took place;

        b.   The names and addresses of any injured persons and witnesses; and

        c.   The nature and location of any injury or damage arising out of the **medical incident**.

    Any claim arising out of such **medical incident** which is subsequently made against any Insured and reported to **us**, shall be considered first made at the time such notice was given to **us**.

    Receipt by **us** of an incident report, including but not limited to variance reports, will not be considered a claim to **us**.

    Any observance or reporting to the First Named Insured by **us** of any physical condition or other circumstance as a result of inspections, audits, engineering, loss control or risk management services shall not be considered a claim to **us**.

    2.   If a claim or **suit** is brought against an Insured arising out of a **medical incident**, the First Named Insured must:

    a.   Immediately record the specifics of the claim or **suit** and the date received;

    b.   Provide **us** with written notice of the claim or **suit** as soon as practicable; and

    c.   Immediately send **us** copies of any demands, notices, summonses, or legal papers received in connection with the claim or **suit**.

B.   Assistance and Cooperation

The Insureds shall:

1.   Cooperate with **us** in the investigation, settlement, or defense of the claim or **suit**; and

2.   Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

An Insured will not, except at the Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without **our** consent.

C.   Knowledge and Notice of **Occurrence**

Knowledge of a **medical incident** on the part of the risk management department or on the part of an **executive officer** constitutes knowledge by the First Named Insured. If someone other than the risk management department or an **executive officer** knows but does not tell the First Named Insured, this insurance is not invalidated.

The First Named Insured's unintentional failure to disclose a hazard at the Policy's inception will not prejudice the Insured's rights under this insurance.

D.   Automatic Extended Reporting Period

1.   If this Coverage Part is canceled or not renewed for any reason other than non-payment of premium, and if the Optional Extended Reporting Period Endorsement is not purchased, then **we** will provide an automatic extended reporting period of sixty (60) days, starting with the end of the **policy period**, during which claims arising out of **medical incidents** which take place on or after the retroactive date but before the end of the **policy period** may be first made.

2.   The automatic extended reporting period does not extend the **policy period** or change the scope of coverage provided. **We** will consider any claim first made during the automatic extended reporting period to have been made on the last day of the **policy period**.

3.   The automatic extended reporting period, however, will not apply to claims if other insurance purchased by Insureds covers them or would cover them if its limits of insurance had not been exhausted.

4.   The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for the automatic extended reporting period.

E.   Optional Extended Reporting Period

1.   If the First Named Insured or **we** cancel or do not renew this insurance, the First Named Insured shall have the option to buy an Optional Extended Reporting Period Endorsement, beginning with the end of the **policy period**. The additional premium for and the term of the Optional Extended Reporting Period Endorsement shall be as stated in Item 3.c. of the Declarations. The First Named Insured can not purchase this Endorsement if **we** cancel for non-payment of premium.

2.    The Optional Extended Reporting Period Endorsement applies only to claims first made against the Insured during the Optional Extended Reporting Period and arising from **medical incidents** which take place on or after the retroactive date and before the end of the **policy period**. The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for claims under the Endorsement.

3.    To obtain an Optional Extended Reporting Period Endorsement the First Named Insured must request it in writing within sixty (60) days after the **policy period** ends and pay the premium due. If the First Named Insured does so, an Extended Reporting Period Endorsement cannot be canceled. If **we** do not receive the written request and payment within sixty (60) days after the **policy period** ends, the First Named Insured may not exercise this option at a later date.

4.    The insurance provided under the Extended Reporting Period Endorsement is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

5.    **Our** offer of terms, conditions or premium different from the expiring Policy or Coverage Part shall not be considered a refusal or failure to renew this insurance.

HEALTHCARE PROFESSIONAL LIABILITY - CLAIMS MADE

AND

HEALTHCARE GENERAL LIABILITY - CLAIMS MADE

ITEM 1. (b) of the DECLARATIONS

<u>Schedule of Other Named Insureds</u>

| <u>Named Insured</u> | <u>Retroactive Date</u> |
|---|---|
| Bourbonnais Terrace | 3/15/02 |
| Burnham Healthcare | 3/15/02 |
| Community Care Center | 3/15/02 |
| County Manor Healthcare | 3/15/02 |
| Crestwood Terrace | 3/15/02 |
| Emerald Park Healthcare | 3/15/02 |
| Frankfort Terrace | 3/15/02 |
| Joliet Terrace | 3/15/02 |
| Kankakee Terrace | 3/15/02 |
| Lake Park Center | 3/15/02 |

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

74777 (12/99)          *Archive Copy*
HC0098

Revised 4.1.02

# HEALTHCARE PROFESSIONAL LIABILITY – CLAIMS MADE
## AND
# HEALTHCARE GENERAL LIABILITY – CLAIMS MADE

## ITEM 1. (b) of the DECLARATIONS

### Schedule of Other Named Insureds - revised

| Named Insured | Retroactive Date |
|---|---|
| Bourbonnais Terrace | 3/15/02 |
| Burnham Healthcare | 3/15/02 |
| Community Care Center | 3/15/02 |
| County Manor Healthcare | 3/15/02 |
| Crestwood Terrace | 3/15/02 |
| Emerald Park Healthcare | 3/15/02 |
| Frankfort Terrace | 3/15/02 |
| Joliet Terrace | 3/15/02 |
| Kankakee Terrace | 3/15/02 |
| Lake Park Center | 3/15/02 |
| Presidential Pavilion | 3/15/02 |
| Terrace Nursing Home | 3/15/02 |
| West Chicago Terrace | 3/15/02 |
| Woodside Extended Care | 3/15/02 |
| Normandy Nursing Home | 3/15/02 |
| Park Plaza Retirement | 3/15/02 |
| Sycamore Healthcare Centre | 4/1/02 |

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
**Authorized Representative**

ENDORSEMENT # 1(revised 4.1.0_,

This endorsement, effective 12:01am  **April 1, 2002**

forms a part of Policy no.:  **679 0997**

Issued to:  **EMI Enterprises, Inc.**

By: **LEXINGTON INSURANCE COMPANY**

# SCHEDULE OF LOCATIONS ENDORSEMENT

The Policy is amended as follows:
The insurance provided by Coverage Part(s):

___X___HEALTHCARE GENERAL LIABILITY COVERAGE PART

___X___HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART

shall be limited to the following location(s), unless otherwise provided for within the Policy:

### ADDRESS

| | |
|---|---|
| 133 Mohawk Drive<br>Boubannais, IL.  60914 | 8001 S. Western Ave.<br>Chicago, IL.  60620 |
| 14500 S. Manistee<br>Burnham, IL  60633 | 1615 Sunset Avenue<br>Waukegan, IL.  60087 |
| 4314 S. Wabash<br>Chicago. IL. 60653 | 928 Joliet Road<br>West Chicago. IL.  60712 |
| 610 Priggs Road<br>St. Louis, Mo. 63138 | 120 W. 26th. Street<br>South Chicago Heights, IL.  60411 |
| 13301 S. Central<br>Crestwood, IL. 60445 | 7301 St Charles Rock Road<br>St. Louis, Mo. 63133 |
| 9125 South  Pulaski<br>Evergreen Park, IL. 60805 | 6840 N. Sacramento<br>Chicago, IL.  60645 |
| 40 Smith<br>Frankfort, IL. 60423 | 720 Sycamore<br>Quincy, IL. 62301 |
| 2230 McDonough<br>Joliet, IL.  60436 | 919 Washington Park<br>Waukegan, IL. 60085 |
| 100 Belle Ave.<br>Boubannais, IL. 60914 | |

All other terms, conditions, and exclusions of the Policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

74780 (12/99)
HC0097

1

March 15, 2002

6790997

E M I ENTERPRISES, INC

LEXINGTON INSURANCE COMPANY

X
X

1.   TBD

*Archive Copy*

ENDORSEMENT NO.1

**This endorsement, effective 12:01 AM:** March 15, 2002

**Forms a part of policy no.:** 6790997

**Issued to:** E M I ENTERPRISES, INC

**By:** LEXINGTON INSURANCE COMPANY

SELF INSURED RETENTION ENDORSEMENT
(Expenses within the Self Insured Retention)

It is agreed that Section V, DEDUCTIBLE, in the HEALTHCARE GENERAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES and Section V, DEDUCTIBLE, in the HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES are both deleted in their entirety and each is replaced with the following:

A.     The First Named Insured shall be responsible for the Self Insured Retention amounts shown below. Expenses incurred by the First Named Insured in investigating and defending claims and suits are included within the Self Insured Retentions. The Self Insured Retention applies separately to each medical incident and to each occurrence to which this policy applies, and the First Named Insured shall not insure against it without our written consent.

    1.     All claims arising from a single occurrence or continuous, related or repeated occurrences shall be subject to one Self Insured Retention. The Self Insured Retention Occurrence Aggregate stated below is the total amount of damages arising out of all Self Insured Retentions for all occurrences during the policy period.

    2.     All claims arising from a single medical incident or continuous, related or repeated medical incidents shall be subject to one Self Insured Retention. The Self Insured Retention Medical Incident Aggregate stated below is the total amount of damages arising out of all Self Insured Retentions for all medical incidents during the policy period.

B.     We will pay damages only in excess of the Self Insured Retentions stated below. We will not be responsible for payment of amounts within the Self Insured Retentions, which the First Named Insured will be obligated to pay.

C.     Our rights and duties with respect to the defense and settlement of claims applies only when an occurrence or medical incident is excess of the Self Insured Retention stated below and only for that portion of the loss which is excess of the Self Insured Retention.

D.     The Limits of Liability as stated in this policy will be reduced by the payment of damages and expenses paid within the Self Insured Retentions.

ENDORSEMENT No. 2

**This endorsement, effective 12:01 AM:**  March 15, 2002

**Forms a part of policy no.:**        6790997

**Issued to:**  E M I ENTERPRISES, INC

**By:** LEXINGTON INSURANCE COMPANY

### HEALTHCARE PROFESSIONAL LIABILITY/GENERAL LIABILITY

### SPECIFIC INDIVIDUAL INSURED SEXUAL MISCONDUCT EXCLUSION

The policy is amended as follows:

**Section III. Exclusion** A.10. Sexual Misconduct of the HEALTHCARE GENERAL LIABILITY COVERAGE PART and **Section III. Exclusion** A.15. Sexual Misconduct of the HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART are both deleted in their entirety and each is replaced with the following:

**We** will not defend or pay claims for:

Sexual Misconduct

Any claim against any **specific individual insured** arising out of any sexual physical contact, sexual abuse or sexual verbal harassment committed by the **specific individual insured** or with the **specific individual insured's** consent; however, **we** will defend such a claim against the **specific individual insured** until it is judicially determined (including a plea of *nolo contendere* in a criminal action) that the **specific individual insured** committed the sexual physical contact, sexual abuse or sexual verbal harassment.  As used in this exclusion, **specific individual insured** shall mean the following individuals while performing duties related to the conduct of **your** business:

1.  An **employee;**
2.  An authorized volunteer worker; or
3.  An independent contractor.

All other terms, conditions and exclusions of the policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**
or countersignature (in States where required)

76097 (11/01)
HCO158          *Archive Copy*

ENDORSEMENT No. 3

**This endorsement, effective 12:01 AM:**  March 15, 2002

**Forms a part of policy no.:**      6790997

**Issued to:**  E M I ENTERPRISES, INC

**By:**  LEXINGTON INSURANCE COMPANY

### TERRORISM EXCLUSION

This policy does not apply in any way to any occurrence, claim, injury or damage as applicable caused by, contributed to or in any way arising directly or indirectly as a result of or in connection with "Terrorism" including, but not limited to, any contemporaneous or ensuing injury or damage caused by fire, looting or theft.

> "Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

> "Terrorism" shall also include any act which is verified or recognized by the United States Government as an act of terrorism.

This endorsement is intended to supercede any other policy language inconsistent therewith.

All other terms and conditions of the policy remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in States where required)

79110 (12/01)
HC0265          *Archive Copy*

ENDORSEMENT # 4

**This endorsement, effective 12:01 AM:** March 15, 2002

**forms a part of policy number:**    6790997

**issued to:** E M I ENTERPRISES, INC

**by:** LEXINGTON INSURANCE COMPANY

## AGGREGATE LIMITS ENDORSEMENT GL/ PL

The Policy is amended as follows:

**I.    AGGREGATE POLICY LIMIT**

The Aggregate Policy Limit stated below is the most **we** will pay for any annual period for the sum of all damages payable under the HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES and the HEALTHCARE GENERAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES.

AGGREGATE POLICY LIMIT:  $15,000,000

**II.   AGGREGATE LIMITS PER LOCATION**

Subject to the Aggregate Policy Limit stated in Item I. above:

A.    HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES, Section IV. Limits of Insurance, Item B. is deleted in its entirety and replaced with the following:

The Aggregate Limit is the most **we** will pay for the sum of all damages under this Coverage Part. The Aggregate Limit shall apply separately to each **location** owned or rented by **you**.

B.    HEALTHCARE GENERAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES, Section IV. Limits of Insurance, Item B. is deleted in its entirety and replaced with the following:

The Aggregate Limit is the most **we** will pay for the sum of:

1.    Damages under Insuring Agreement A. **Bodily Injury** and **Property Damage**, except damages because of **bodily injury** or **property damage** included in the **products-completed operations hazard;**

2.    Damages under Insuring Agreement B. **Personal and Advertising Injury;** and

3.    Medical expenses under Insuring Agreement C.

The Aggregate Limit shall apply separately to each **location** owned or rented by **you**.

**III.  DEFINITIONS**

GENERAL POLICY PROVISIONS AND CONDITIONS, Section I. Definitions Applicable to All Coverage Parts is amended to include the following additional definition:

**Location** means premises involving the same operations of the Named Insured using the same or connecting lots, or premises involving the same operations of the Named Insured whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
Authorized Representative

**ENDORSEMENT # 5**

**This endorsement, effective 12:01 AM:** March 15, 2002

**forms a part of policy number:**        6790997

**issued to:** E M I ENTERPRISES, INC

**by:** LEXINGTON INSURANCE COMPANY

<u>**MINIMUM EARNED PREMIUM ENDORSEMENT**</u>

This Policy is amended as follows:

Section IV. B. CANCELLATION of the GENERAL POLICY PROVISIONS AND CONDITIONS is amended by adding the following:

    If the First Named Insured cancels this Policy, **we** shall retain an earned premium which shall be the greater of the customary short-rate procedure or the minimum earned premium of $478,150.

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
Authorized Representative

74778 (12/99)
HC0088

ENDORSEMENT # 6

**This endorsement, effective 12:01 AM:**  March 15, 2002

**forms a part of policy number:**        6790997

**issued to:**  E M I ENTERPRISES, INC

**by:**  LEXINGTON INSURANCE COMPANY

<u>**AGGREGATE LIMITS OF INSURANCE PER LOCATION ENDORSEMENT**</u>

This Policy is amended as follows:

The DECLARATIONS, Item 5. LIMITS OF INSURANCE, (II) Healthcare General Liability is amended by adding the following:

    Aggregate Limit Per **Location**            $ 3,000,000

Section IV. LIMITS OF INSURANCE of the HEALTHCARE GENERAL LIABILITY OCCURRENCE COVERAGE PART is amended by adding the following:

    The Aggregate Limit Per **Location** is the most **we** will pay for each **location** owned or rented by **you** for the sum of:

1.    Damages under Insuring Agreement A, except damages because of **bodily injury** or **property damage** included in the **products-completed operations hazard;**

2.    Damages under Insuring Agreement B; and

3.    Medical expenses under Insuring Agreement C.

Section I. DEFINITIONS APPLICABLE TO ALL COVERAGE PARTS of the GENERAL POLICY PROVISIONS AND CONDITIONS is amended by adding the following:

    **Location(s)** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
            **Authorized Representative**

*Archive Copy*

ENDORSEMENT NO.7

**This endorsement, effective 12:01 AM:**  March 15, 2002

**Forms a part of policy no.:**        6790997

**Issued to:**  E M I ENTERPRISES, INC

**By:**  LEXINGTON INSURANCE COMPANY

SELF INSURED RETENTION ENDORSEMENT
(Expenses within the Self Insured Retention)

It is agreed that Section V, DEDUCTIBLE, in the HEALTHCARE GENERAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES and Section V, DEDUCTIBLE, in the HEALTHCARE PROFESSIONAL LIABILITY COVERAGE PART FOR LONG TERM CARE FACILITIES are both deleted in their entirety and each is replaced with the following:

A.    The First Named Insured shall be responsible for the Self Insured Retention amounts shown below. Expenses incurred by the First Named Insured in investigating and defending claims and suits are included within the Self Insured Retentions. The Self Insured Retention applies separately to each medical incident and to each occurrence to which this policy applies, and the First Named Insured shall not insure against it without our written consent.

   1.    All claims arising from a single occurrence or continuous, related or repeated occurrences shall be subject to one Self Insured Retention. The Self Insured Retention Occurrence Aggregate stated below is the total amount of damages arising out of all Self Insured Retentions for all occurrences during the policy period.

   2.    All claims arising from a single medical incident or continuous, related or repeated medical incidents shall be subject to one Self Insured Retention. The Self Insured Retention Medical Incident Aggregate stated below is the total amount of damages arising out of all Self Insured Retentions for all medical incidents during the policy period.

B.    We will pay damages only in excess of the Self Insured Retentions stated below. We will not be responsible for payment of amounts within the Self Insured Retentions, which the First Named Insured will be obligated to pay.

C.    Our rights and duties with respect to the defense and settlement of claims applies only when an occurrence or medical incident is excess of the Self Insured Retention stated below and only for that portion of the loss which is excess of the Self Insured Retention.

D.    The Limits of Liability as stated in this policy will be reduced by the payment of damages and expenses paid within the Self Insured Retentions.

ENDORSEMENT NO. 7    (Continued)

E.      The First Named Insured shall at all times maintain a claims handling service approved by us to handle claims within the Self Insured Retentions.

F.      The First Named Insured shall immediately notify us in writing of any claims to which this policy applies which

     1.      an Insured has received notice of a suit in which the damage demand exceeds the amount of the Self Insured Retention, or,

     2.      may exceed 50% of the Self Insured Retention, or,

     3.      involves any of the following:

          a.      stage IV decubitus ulcers, or,

          b.      sexual abuse of a patient or resident, or,

          c.      falls by a patient or resident which required the patient or resident to be admitted to an acute care facility.

SCHEDULE OF SELF INSURED RETENTIONS

| | |
|---|---|
| Self Insured Retention per Occurrence: | $250,000 |
| Self Insured Retention Occurrence Aggregate: | $0 |
| Self Insured Retention per Medical Incident: | $250,000 |
| Self Insured Retention Medical Incident Aggregate: | $0 |

All other terms, conditions and exclusions of the policy remain unchanged.

_____
**Authorized Representative
or countersignature (where required by law)**

## ENDORSEMENT NO. 8

**This endorsement, effective 12:01AM:**  MARCH 15, 2002

**forms a part of Policy Number:**   6790997

**Issued to:** EMI ENTERPRISES, INC

**By:**  LEXINGTON INSURANCE COMPANY

### INCURRED LOSS RETROSPECTIVE RATING PREMIUM AGREEMENT

EMI Enterprises, Inc., hereinafter called the "First Named Insured", and Lexington Insurance Company, hereinafter called the "Company" mutually understand and agree that the premium for policy 6790997 issued for the policy period March 15, 2002 to March 15, 2003 shall be computed and adjusted in accordance with the following rating plan.  Failure of the First Named Insured to pay premium(s) when due nullifies any future loss payment obligations of the Company.

I.      **Retrospective Premium Computation**

A calculation of the Retrospective Premium will be made annually by the Company, beginning with **Incurred Losses** valued as of thirty (30) months after the inception of this policy, and then subsequently with **Incurred Losses** valued every twelve (12) months thereafter.  The Retrospective Premium will be calculated by the Company within thirty (30) days of each loss valuation date.

The Retrospective Premium will be the sum of the **Basic Premium** plus the **Incurred Losses**, subject to the **Maximum Premium** and subject to the **Minimum Premium**.

II.     **Retrospective Premium Adjustments**

A.      First Retrospective Premium Adjustment:

A Retrospective Premium will be calculated with **Incurred Losses** valued as of thirty (30) months after the inception of this policy period.  The Retrospective Premium so calculated will be compared to the **Standard Premium**.  If the Retrospective Premium is less than the **Standard Premium**, premium will be returned by the Company to the First Named Insured, subject to the **Minimum Premium**, in an amount equal to the difference between the **Standard Premium** and the Retrospective Premium.  If the Retrospective Premium is greater than the **Standard Premium**, an additional premium will be paid by the First Named Insured to the Company, subject to

MNSCPT ( 03/02)

## ENDORSEMENT NO. 8

the **Maximum Premium**, in an amount equal to the difference between the **Standard Premium** and the Retrospective Premium.

B.      Subsequent Retrospective Premium Adjustments:

A Retrospective Premium will be calculated annually by the Company.  The Retrospective Premium so calculated will be compared to the previous Retrospective Premium.

If the Retrospective Premium calculated at each Adjustment is less than the Retrospective Premium paid by the First Named Insured in the previous Adjustment, an amount equal to the difference between these Adjustments, subject to the **Minimum Premium**, will be paid by the Company to the First Named Insured.

If the Retrospective Premium calculated at each Adjustment is greater than the Retrospective Premium paid by the First Named Insured in the previous Adjustment, an amount equal to the difference between these Adjustments, subject to the **Maximum Premium**, will be paid by the First Named Insured to the Company.

C.      Final Retrospective Premium Adjustment:

The Retrospective Premium will be adjusted annually as described above until:

1.      All claims have been closed; or
2.      The paid losses used in the Retrospective Premium calculation causes the Retrospective Premium to equal the **Maximum Premium**, and the **Maximum Premium**  has been paid by the First Named Insured; or
3.      A mutual agreement has been reached in writing between the First Named Insured and the Company.

III.    **Collateral**

Prior to the payment by the Company of any return premium due to the First Named Insured as a result of any Retrospective Premium Adjustment, the First Named Insured will provide to the Company a clean, irrevocable, automatically renewable Letter of Credit, from an institution acceptable to AIG with wording acceptable to AIG, in the amount of the difference between the Retrospective Premium and the **Standard Premium**. The Company will pay the return premium due to the First Named Insured promptly after receiving from the First Named Insured said Letter of Credit.

IV.     **Definitions.** When used in this Endorsement:

**Basic Premium** means 25% of the **Standard Premium**.

MNSCPT ( 03/02)

## ENDORSEMENT NO. 8

**Incurred Losses** means without limitation the sum of:

1.    All paid losses; plus

2.    Open reserves as determined by the Company on all open losses; plus

3.    Interest accruing after entry of a judgement against the Insured, **plus**

4.    Allocated loss adjustment expenses on each loss, plus

5.    Expenses incurred in seeking recovery against a third party.

Incurred Losses <u>does not</u> mean that portion of any loss either paid or reserved which is contained within the Self Insured Retention as stated in this policy.

**Standard Premium** means $1,912,600, which is the annual premium stated on the Declarations Page of this policy, plus any additional premium for exposures added after the effective date of this policy.

**Maximum Premium** means 150% of **Standard Premium.**

**Minimum Premium** means 50% of **Standard Premium.**

In witness thereof, the parties hereto have caused this agreement to be executed by their respective duly authorized officers:

Accepted by the First Named Insured:            Accepted by the Company:

_____            _____
Name – Signature            Name – Signature

*Morris Estormes*            *Richard Bucilla*
Name – Print            Name – Print

*Gen Tachner*            *EVP*
Title            Title

*11-5-04*            *11/10/04*
Date            Date

MNSCPT ( 03/02)

**ENDORSEMENT #8**

**This endorsement, effective 12:01 AM:** April 1, 2002

**Forms a part of policy no.:** 6790997

**Issued to: EMI Enterprises, Inc.**

**By:** LEXINGTON INSURANCE COMPANY

ADDITIONAL LOCATION

An additional premium of $112,950.00 is charged due to adding location:

Sycamore Healthcare Centre
720 Sycamore
Quincy, IL. 62301

The following listed forms and endorsements are amended effective April 1, 2002:

Schedule of Other Named Insureds-revised    (74777)

Schedule of Locations Endorsement           (74780)

All other terms, conditions, and exclusions of the Policy remain unchanged.

_____

**Authorized Representative**

## ENDORSEMENT NO. 8B

This endorsement, effective March 14, 2003, forms a part of Policy No. 6790997

Issued to: **EMI Enterprises, Inc.**

By: **Lexington Insurance Company**

### INCURRED LOSS RETROSPECTIVE RATING ADJUSTMENT

ADJUSTMENT:                     Second and Final

POLICY NUMBER:              6790997

POLICY PERIOD:               March 15, 2002 to March 15, 2003

RETROSPECTIVE PREMIUM FORMULA:        Basic Premium + Incurred Losses = Retrospective Premium, subject to the Maximum Premium and subject to the Minimum Premium

STANDARD PREMIUM:         $2,025,550

BASIC PREMIUM:                $506,388 = 25% of Standard Premium

MAXIMUM PREMIUM:         $3,038,325 = 150% of Standard Premium

MINIMUM PREMIUM:         $1,012,775 = 50% of Standard Premium

INCURRED LOSSES:            $6,555  valued as of 9/15/05

RETROSPECTIVE PREMIUM COMPUTATION:    $506,388 + $6,555 = $512,943

CURRENT RETROSPECTIVE PREMIUM:    $1,012,775 = Minimum Premium

PRIOR RETROSPECTIVE PREMIUM:    $1,012,775 = Minimum Premium

ADDITIONAL/(RETURN) PREMIUM:    None

COLLATERAL ON HAND:         $1,012,775

COLLATERAL REQUIRED:        None – All claims are closed.  Retrospective Rating Program is now closed.

ADDITIONAL/(RETURN) COLLATERAL:    ($1,012,775) - LOC has been returned.

All other terms, conditions and exclusions of the Policy remain unchanged.

**RETROSPECTIVE RATING PROGRAM IS NOW CLOSED.  SEE SIGNED POLICY RELEASE IN FILE.  NO FURTHER ADJUSTMENTS WILL BE MADE.**


Authorized Representative

## ENDORSEMENT NO. 8A

This endorsement, effective March 14, 2003, forms a part of Policy No. 6790997

Issued to: EMI Enterprises, Inc.

By: **Lexington Insurance Company**

### INCURRED LOSS RETROSPECTIVE RATING ADJUSTMENT

ADJUSTMENT:                    First

POLICY NUMBER:                 6790997

POLICY PERIOD:                 March 15, 2002 to March 15, 2003

RETROSPECTIVE PREMIUM FORMULA:         Basic Premium + Incurred Losses = Retrospective Premium, subject to the Maximum Premium and subject to the Minimum Premium

STANDARD PREMIUM:              $2,025,550

BASIC PREMIUM:                 $506,388 = 25% of Standard Premium

MAXIMUM PREMIUM:               $3,038,325 = 150% of Standard Premium

MINIMUM PREMIUM:               $1,012,775 = 50% of Standard Premium

INCURRED LOSSES:               $29,830  valued as of 9/15/04

RETROSPECTIVE PREMIUM COMPUTATION:     $506,388 + $29,830 = $536,218

CURRENT RETROSPECTIVE PREMIUM:         $1,012,775 = Minimum Premium

PRIOR RETROSPECTIVE PREMIUM:           None

ADDITIONAL/(RETURN) PREMIUM:           ($1,012,775)

COLLATERAL ON HAND:                    None

COLLATERAL REQUIRED:                   $1,012,775

ADDITIONAL/(RETURN) COLLATERAL:        $1,012,775

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
Authorized Representative

## ENDORSEMENT NO. 8C

This endorsement, effective March 14, 2003, forms a part of Policy No. 67910997

Issued to:  **EMI Enterprises, Inc.**

By:  **Lexington Insurance Company**

## POLICY RELEASE

In consideration of the return premium called for under Endorsement #8A, Incurred Loss Retrospective Rating Premium Adjustment for the period 3/15/02 to 3/15/03, EMI Enterprises, Inc. agrees that the policy is considered to be void ab initio for the policy period 3/15/02 to 3/15/03.

In consideration of the return premium, EMI Enterprises, Inc., further acknowledges and agrees that Lexington Insurance Company is fully released from any further obligation to investigate, defend or make payment of any kind for any claim or for any incident which has been reported to Lexington but which has not yet become a claim

The Minimum Premium the Lexington Insurance Company is entitled to retain despite the foregoing is $1,012,775.

**EMI Enterprises, Inc.**                    **Lexington Insurance Company**

_____                    _____
Signature CEO or CFO                         AUTHORIZED REPRESENTATIVE

AVIM VERNFED
_____
Print Name CEO or CFO

Date: ___9/30/05___                          Date: ___10/6/2005___